[ Civ. No. 29994.   Second Dist., Div. Four.   May 16, 1967.]

MITCHELL HARVEY, a Minor, etc., et al., Plaintiffs and Appellants, v. D & L CONSTRUCTION COMPANY, Defendant and Respondent.

O'Connor, Cavanagh, Westover, Anderson, Killingsworth & Beshears, John H. Westover, Westover & Currey and Harry E. Westover for Plaintiffs and Appellants.

Crider, Tilson & Ruppé, Elber H. Tilson and Abe Mutchnik for Defendant and Respondent.

JEFFERSON, J.—Plaintiff, a minor, by his Guardian *ad Litem,* appeals from a judgment entered after the granting of a nonsuit in favor of the defendant D & L Construction Company (hereafter referred to as D & L), in a personal injury action brought against it and its employee, one Jesse Chism (not a party to this appeal), who was driving his pickup truck on a highway in Arizona when he struck plain-

tiff, who was riding a bicycle, severely injuring him. The accident occurred while Chism, a cement finisher, was on his way home to Pasadena for the weekend from a construction job in Yuma, Arizona, where he was employed during the week by D & L. Riding with Chism at the time was one Chris Richards, a fellow D & L cement finisher, who was also going home for the weekend.

Defendant D & L was sued on the theory of *respondeat superior*. The nonsuit was granted upon its motion, at the conclusion of the plaintiff's case, the court ruling that the evidence was insufficient to take the case to the jury upon the question of whether the employee Chism was within the course and scope of his employment at the time of the accident.

Pertinent to this appeal is the following principle of law:

■ "In reviewing a judgment of nonsuit, it must always be borne in mind that a court can grant a nonsuit only when, disregarding conflicting evidence and giving plaintiff's evidence all the value to which it is legally entitled, including every legitimate inference which may be drawn therefrom, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff if such a verdict were given. [Citations.]" (*Robinson* v. *George*, 16 Cal.2d 238, 241-242 [105 P.2d 914].)

Chism (called to testify by plaintiff pursuant to Code Civ. Proc. § 2055) was the only witness at the trial. He related that before he went to work for D & L at the Yuma construction site, he had worked for the same company in Canoga Park, California. He would go to different construction sites and work for various employers, D & L included. He had considerable experience as a cement finisher and his services were often sought by contractors. Jess Hallmark, the superintendent of the D & L construction work being done in Yuma, came to him several times while he was working in Canoga Park, and asked him to come to work for D & L in Yuma. Hallmark related that he was having trouble securing and keeping competent cement finishers on that job and it would make his job easier if Chism would come down there to work. After initially turning the job down, he decided to go after not being able to work on the Canoga Park job for three weeks because of rain. Before driving to Yuma, he had first filled his gas tank with "D & L gas," and had picked up some D & L equipment as Hallmark had instructed. He was there a few days before the terms of his employment were

agreed upon. Hallmark agreed to pay him $187 per week take home pay for a five-day week "rain or shine." He had insisted on this guarantee. D & L in addition provided him with a place to stay during the week. At the Canoga Park site he had been paid by the day—$35 for an eight-hour day (or $175 if he worked a full week).

Prior to the accident, during the time he worked for D & L in Yuma, he drove home to Pasadena on every weekend. Sometimes he drove his superintendent's truck. On a number of these trips he brought D & L supplies back to the job site. On three or four occasions, while he was home he hired other cement finishers, at D & L's request, and on one occasion transported them to Yuma. He had hired Chris Richards. He gave the latter lifts back and forth with him on weekends. With the exception of Richards, the employees he had hired had all quit. Richards was riding with him when the accident occurred. While working on the job itself he often used his truck to haul D & L equipment around. He filled his truck with D & L gas whenever he needed it. He had D & L gas in the truck at the time of the accident.

Chism further testified, in response to questioning by counsel for D & L, that he had no errand to perform for D & L on the weekend of the accident; he had neither men nor equipment to bring back on his return trip.

Initially, it is to be noted that, although under conflicts of law principles, the law of Arizona apparently governs in this case—being the jurisdiction where the alleged tort occurred (2 Witkin, Summary of Cal. Law (1960) p. 1236)—it is conceded no conflict in fact exists. Arizona and California apply the same principles of law with respect to the issues raised herein. Accordingly, we cite California cases in this opinion.

Generally, an employee is not acting within the scope of his employment when he is going to or coming from his place of employment—often referred to as the " 'going and coming rule.' " (*Vivion* v. *National Cash Register Co.,* 200 Cal.App.2d 597, 605 [19 Cal.Rptr. 602] ; *Boynton* v. *McKales,* 139 Cal.App.2d 777, 788, 789 [294 P.2d 733] ; 1 Witkin, Summary of Cal. Law (1960) pp. 448-449 ; and see annotation in 52 A.L.R.2d 287.) This rule is premised on the theory that ordinarily the employment relationship is suspended from the time an employee leaves his job to go home until he resumes it.

However, the "going and coming rule" is not applicable where the employee is on a "special errand."

"If the employee is not simply on his way from his home to his normal place of work or returning from said place to his home for his own purpose, but is coming from his home or returning to it on a special errand either as part of his regular duties or at a specific order or request of his employer, the employee is considered to be in the scope of his employment from the time that he starts on the errand until he has returned or until he deviates therefrom for personal reasons. [Citations.]" (*Boynton* v. *McKales, supra,* 139 Cal.App.2d 777, 789; see also *Vivion* v. *National Cash Register Co., supra,* 200 Cal.App.2d 597, 605; 1 Witkin, Summary of Cal. Law (1960) p. 449.)

To find the special errand rule applicable, "It is not necessary that the servant is directly engaged in the duties which he was employed to perform, but included are also missions which incidentally or indirectly contribute to the service, incidentally or indirectly benefit the employer. [Citations.]" (*Boynton* v. *McKales, supra,* at p. 789.)

"The decisive question is whether there is any substantial conflict in the evidence or whether conflicting inferences can reasonably be drawn from the evidence adduced and if so, then it is a question of fact for the jury. (*Boynton* v. *McKales, supra,* 139 Cal.App.2d 777, 790.)" (*Vivion* v. *National Cash Register Co., supra,* 200 Cal.App.2d 597, 605.)

██ Despite Chism's conclusion to the contrary in his testimony, evidence was presented from which a reasonable inference could be drawn that at the time of the accident he was performing "a special errand" for D & L in providing his fellow-employee Richards with transportation.

There was evidence that the contract of employment of Chism included a duty on his part to perform errands for his employer on the weekend trips to and from his home. It was further established that D & L furnished gasoline to him for these trips. While it may be inferred that this was D & L's way of helping to defray the added expense of his having to travel to the remote Yuma jobsite, still, just as plausible an inference, is that this added compensation was at least in part a payment for the errands he performed in route.

One errand Chism performed was to hire additional cement finishers while he was in Los Angeles. Because of the heat and remoteness of the location, D & L had difficulty getting and keeping employees skilled in this trade. With the exception of

Richards, the other cement finishers Chism hired for D & L had all quit before the date of the accident. This last employee Chism drove home on the weekends.

The evidence was sufficient under the "special errand" theory to support a finding that D & L's employee was acting within the course and scope of his employment at the time of the accident. Consequently, the court erred in granting the nonsuit.

The judgment is reversed.

Files, P. J., and Kingsley, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied July 12, 1967.