[Civ. No. 11721.   Third Dist.   Feb. 20, 1969.]

RUTH HARRIS et al., Plaintiffs and Appellants, v. ORO-DAM CONSTRUCTORS, Defendant and Respondent.

Reginald M. Watt for Plaintiffs and Appellants.

Leonard & Lyde and Raymond A. Leonard for Defendant and Respondent.

FRIEDMAN, J.—In this wrongful death action the jury returned a verdict against Byers, the defendant automobile

driver. Plaintiffs appeal, because the jury exonerated Oro-Dam Constructors, his employer. At the time of the collision Byers had completed his daily work shift and was driving his own automobile on a direct homeward journey. ▮ Although the "going and coming rule" ordinarily insulates the employer from liability for the negligent driving of an employee enroute to or from work, plaintiffs contend that the employer's payment of Byers' travel expenses excludes the going and coming rule as a matter of law.

Two months before the accident Oro-Dam Constructors, a contractor on the Oroville Dam Project, had employed Byers as an oiler on a truck crane. Byers lived in Marysville, about 23 miles from the job site. The governing collective bargaining agreements gave Byers, a member of the operating engineers' union, the benefits provided under the employers' contract with the piledrivers' union. Byers received an hourly wage for an eight-hour shift, which began and ended at the job site. Thus the hourly wage rate did not cover travel time. He did receive a daily transportation allowance of $6. This allowance was established by the piledrivers' collective bargaining contract, which described it as a "reimbursement for travel expenses." It was payable to employees who resided more than 15 miles from the place of work.

▮ The going and coming rule is a special expression of the *respondeat superior* principle, which limits an employer's liability for his employee's torts to those committed in the course of the latter's employment. As a feature of California automobile liability law, the limitation first appeared as a logical application of the *respondeat superior* doctrine. (*Mauchle* v. *Panama-Pacific Intl. Exposition Co.* (1918) 37 Cal.App. 715, 717-719 [174 P. 400]; *Nussbaum* v. *Traung Label etc. Co.* (1920) 46 Cal.App. 561, 571-572 [189 P. 728].) Later, it crystallized as a decisional rule under the sobriquet "going and coming." (*Robinson* v. *George* (1940) 16 Cal.2d 238, 244 [105 P.2d 914]; *Boynton* v. *McKales* (1956) 139 Cal.App.2d 777, 788-789 [294 P.2d 733]; *Vivion* v. *National Cash Register Co.* (1962) 200 Cal.App.2d 597, 605 [19 Cal. Rptr. 602]; *Harvey* v. *D & L Constr. Co.* (1967) 251 Cal.App. 2d 48, 51 [59 Cal.Rptr. 255]; see 6 Blashfield, Automobile Law and Practice (3d ed. 1966) pp. 166-171; Annots. 52 A.L.R.2d 287-346, 52 A.L.R.2d 350-402.) Generally, the rule declares that an employee is not within the scope of his employment while he is going to or returning from his place of work. The rule is sometimes ascribed to the theory that the

employment relationship is "suspended" from the time he leaves his job to go home until he returns to it. (See, e.g., *Harvey* v. *D & L Constr. Co., supra.*) Sometimes it is ascribed to the notion that he is not at that time rendering a service to his employer. (See, e.g., *Robinson* v. *George, supra*; Rest. 2d Agency, § 229, com. d.)

The rule has had a parallel development in a separate but related field of the law, workmen's compensation. The problem in the workmen's compensation cases is whether an injury to the employee arose "out of and in the course of the employment." (Lab. Code, § 3600.) The limitation which denies compensation when the employee is injured enroute between home and work originated in British workmen's compensation decisions and was imported into California by *Ocean Acc. & Guar. Corp.* v. *Industrial Acc. Com.* (1916) 173 Cal. 313, 322 [159 P. 1041, L.R.A. 1917B 336]. Since then, the going and coming rule "has become a part of the jurisprudence of workmen's compensation by judicial decision." (*Zenith Nat. Ins. Co.* v. *Workmen's Comp. App. Bd.* (1967) 66 Cal.2d 944, 946 [59 Cal.Rptr. 622, 428 P2d 606].) " 'It is the general rule that injuries sustained by an employee going to or returning from work are not compensable under the Workmen's Compensation Act. The rule is premised on the theory that ordinarily the employment relationship is suspended from the time the employee leaves his work to go home until he resumes his work.' " (*Kobe* v. *Industrial Acc. Com.* (1950) 35 Cal.2d 33, 35 [215 P.2d 736], quoted in *Zenith Nat. Ins. Co.* v. *Workmen's Comp. App. Bd., supra,* at pp. 946-947.)

California workmen's compensation decisions recognize a number of exceptions to the going and coming rule. Where the employer requires the employee to drive his own car to work, the latter's injury is employment-connected and compensable. The rationale is that his trip indirectly benefits the employer, hence is incompatible with a suspension of the employment relationship. (*Smith* v. *Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 814, 819-820 [73 Cal.Rptr. 253, 447 P.2d 365]; see also *Whaley* v. *Workmen's Comp. App. Bd.* (1968) 267 Cal. App.2d 754 [73 Cal.Rptr. 348].) Similarly, the going and coming rule will not bar workmen's compensation coverage where the employer defrays the employee's travel expenses. (*Zenith Nat. Ins. Co.* v. *Workmen's Comp. App. Bd., supra,* 66 Cal.2d at pp. 947-949; *Kobe* v. *Industrial Acc. Com., supra,* 35 Cal.2d at p. 35; 2 Hanna, California Law of Employee

Injuries and Workmen's Compensation (2d ed.) pp. 9-38—9-39; 1 Larson, Workmen's Compensation Law, pp. 270-277.) The travel expense exception applies whether the employer pays travel expenses pursuant to contract or in lieu of a promise to furnish transportation. (*Zenith Nat. Ins. Co.* v. *Workmen's Comp. App. Bd., supra,* 66 Cal.2d at p. 949, fn. 4.)

Plaintiffs rely heavily on the workmen's compensation "travel expense" cases. Indeed, a number of California decisions cite the tort liability and workmen's compensation cases interchangeably, as though the prolongations and indentations of the going and coming rule must precisely duplicate themselves in both fields of the law. (See, e.g., *Richards* v. *Metropolitan Life Ins. Co.* (1941) 19 Cal.2d 236, 239-244 [120 P.2d 650]; *Robinson* v. *George, supra,* 16 Cal.2d at pp. 244-245; *Boynton* v. *McKales, supra,* 139 Cal.App.2d at p. 789.) Plaintiffs also rely on *Breland* v. *Traylor Engineering etc. Co.* (1942) 52 Cal.App.2d 415, 423-425 [126 P.2d 455]. *Breland,* indeed, is a direct precedent, since it is a tort case which excludes application of the coming and going rule where the employee-driver receives a transportation allowance from the employer. Because *Breland* rests on workmen's compensation decisions to the exclusion of tort principles and precedents, we do not care to be bound by it. Although a healthy symbiosis is possible, precedents developed in one field should not be injected into another without recognition of the separate principles prevailing in each.[1]

---

[1]Several decisions express a refusal to absorb workmen's compensation decisions into the law of *respondeat superior* tort liability. (*Conversions & Surveys* v. *Roach* (1st Cir. 1953) 204 F.2d 449, 501; *Campbell's Case* (1934) 288 Mass. 529 [193 N.E. 365, 366-367]; *Elias* v. *Midwest Marble & Tile Co.* (Okla. 1956) 302 P.2d 126, 128; *Laurie* v. *Mueller* (1956) 248 Minn. 1 [78 N.W.2d 434, 438, fn. 10].) A California decision observes only that workmen's compensation cases are "of assistance" in determining vicarious liability problems. (*DeMirjian* v. *Ideal Heating Corp.* (1954) 129 Cal.App.2d 758, 769 [278 P.2d 114].) There are many circumstances in which workmen's compensation may be allowed for acts which would be outside the scope of employment for tort liability purposes. (See *Pacific Emp. Ins. Co.* v. *Industrial Acc. Com.* (1945) 26 Cal.2d 286, 293 [158 P.2d 9, 159 A.L.R. 313].)

In *Laurie* v. *Mueller, supra,* the Minnesota court quotes Riesenfeld & Maxwell, Modern Social Legislation, page 139: " '. . . workmen's compensation is a *type of social insurance* designed to protect the workers against *occupational* hazards of a particular class. . . . it would be wholly erroneous to think that the techniques used for the proper allocation of certain industrial hazards could be correctly transposed for the distribution of hazards of a totally different kind and involving a separate class of persons subjected to such exposure. . . .' "

A leading text on workmen's compensation declares: "Almost every major error that can be observed in the development of compensation law, whether judicial or legislative, can be traced either to the importa-

Court-made workmen's compensation doctrines develop from a social philosophy distinct from that underlying tort rules. Tort liability rests upon fault, compensability for employee injuries upon work-connection regardless of fault. Work-connection as the basis of compensability serves to transfer the cost of injury to the ultimate buyers of the commodity or service in the production of which the injury has occurred. (1 Larson, *op. cit.*, pp. 6-7.) In reviewing workmen's compensation awards, the courts heed statutory admonitions for a liberal construction favoring coverage of the injury. (Lab. Code, § 3202; *Lundberg* v. *Workmen's Comp. App. Bd.*, 69 Cal.2d 436, 439 [71 Cal.Rptr. 684, 445 P.2d 300].) Although not always reiterated, the promptings of liberalized coverage frequently serve as the inarticulate impulse for judicial limitations upon the going and coming rule in workmen's compensation cases.

The expansions and contractions of vicarious liability for torts result from other considerations. Although in a sense *respondeat superior* imposes strict liability upon the employer, its foundation is the imputation of the employee's fault to the employer because of the special relationship between them. (2 Harper and James, Torts (1956) pp. 1361-1363; Prosser, Torts (3d ed. 1964) p. 470.) Activity "within the scope of employment" is the pivot of the employer's responsibility, but the pivoting action responds to two primary inquiries: (1) the activity's benefit to the employer's enterprise and (2) his right to control it. (*Standard Oil Co.* v. *Anderson* (1909) 212 U.S. 215, 220-221 [53 L.Ed. 480, 483-484, 29 S.Ct. 252]; *Robinson* v. *George, supra,* 16 Cal.2d at p. 244; *Gossett* v. *Simonson* (1966) 243 Ore. 16 [411 P.2d 277, 279-282]; Rest. 2d Agency, §§ 219, 228; 2 Harper and James, *op. cit.* 1366-1370; Prosser, *op. cit.* pp. 471-473; Laski, *The Basis of Vicarious Liability* (1916) 26 Yale L.J. 105, 123-124; Ferson, *Bases for Master's Liability and for Principal's Liability to Third Person* (1951) 4 Vand. L.Rev. 260, 269-270, 287.)[2]

tion of tort ideas, or, less frequently, to the assumption that the right to compensation resembles the right to the proceeds of a personal insurance policy." (1 Larson, *op. cit.* 2-3.)

[2]Some writers suggest policy justifications as additional ingredients of *respondeat superior* determinations, i.e., the parties' relative ability to bear or spread the damages and the efficacy of a rule of liability as an accident prevention measure. (2 Harper and James, *op. cit.* 1363, 1369-1371; Seavey, *Studies in Agency* (1949) pp. 150-152; Douglas, *Vicarious Liability and Administration of Risk* (1929) 38 Yale L.J. 584, 587-594.)

The test of benefit to the employer's enterprise is expressed in California case law by the requirement that the employee be "engaged in the duties which he was employed to perform" [or] "those acts which incidentally or indirectly contribute to the [employer's] service." (*Kish* v. *California State Auto. Assn.* (1922) 190 Cal. 246, 249 [212 P. 27]; *Boynton* v. *McKales, supra,* 139 Cal.App.2d at p. 789; see also Rest. 2d Agency, §§ 228, 229.) Conversely, the employer is not liable when the employee is pursuing "his own ends." (*Kish* v. *California State Auto. Assn., supra,* 190 Cal. at p. 248; Rest. 2d Agency, § 235.) Although the going and coming rule rests upon recognition that travel between home and work is primarily for the employee's benefit and only tangentially for the employer's, variant arrangements may evoke a "dual or combined purpose" rule. (*Gipson* v. *Davis Realty Co.* (1963) 215 Cal.App.2d 190, 211 [30 Cal.Rptr. 253]; Rest. 2d Agency, § 236; note, 16 Okla. L.Rev. 181 (1963).) The employee may combine his trip with a "special errand" for the employer. (*Harvey* v. *D & L Constr. Co., supra,* 251 Cal.App.2d at p. 52; *Boynton* v. *McKales, supra,* 139 Cal.App.2d at p. 789.) The employer may furnish an automobile for his employee's use, prompting the inquiry whether the driving takes place primarily to assist the employer's interests or mainly for the benefit of the employee. (Rest. 2d Agency, § 229, com. d; 6 Blashfield, *op. cit.,* pp. 168-170.) An employee who does not work at a fixed location but travels from place to place on his employer's business, may drive his own car at the employer's direction, with or without an expense allowance, *e.g., Smith* v. *Workmen's Comp. App. Bd., supra,* 69 Cal.2d 814; *Robinson* v. *George, supra,* 16 Cal.2d 238; *Richards* v. *Metropolitan Life Ins. Co., supra,* 19 Cal.2d 236; see also cases cited 52 A.L.R.2d at pp. 298-300, 309-311.

At this point several characteristics of the going and coming rule emerge. First, it is usually invoked when the employee performs services "at or in a particular plant or upon particular premises. . . ." (*Robinson* v. *George, supra,*

Such considerations seem less appropriate to the resolution of vicarious liability problems than to the inquiry whether the employer is under a duty of care to control the immediate actor in order to prevent injury to third persons. The latter inquiry enters into the ascertainment of direct rather than vicarious liability. (See *Connor* v. *Great Western Sav. & Loan Assn.* (1968) 69 Cal.2d 850, 864-865 [73 Cal.Rptr. 369, 447 P.2d 609]; *Lehmuth* v. *Long Beach Unified School Dist.* (1960) 53 Cal.2d 544, 551-553 [2 Cal.Rptr. 279, 348 P.2d 887]; *Richards* v. *Stanley* (1954) 43 Cal.2d 60, 65-67 [271 P.2d 23]; *Fuller* v. *Standard Stations, Inc.* (1967) 250 Cal.App.2d 687, 690-692 [58 Cal.Rptr. 792].

16 Cal.2d at p. 245.) Second, it has particular application to vehicle accidents of employees whose jobs do not embrace driving.[3] The present employee, Byers, worked at a fixed location and was not employed to drive.

The going and coming rule recognizes that travel between home and work is primarily for the employee's benefit. Benefit is a tangible fact. When a trip for the employee's benefit concurrently produces some additional benefit to the employer, an abstract employment relationship may result. (*Smith* v. *Workmen's Comp. App. Bd., supra,* 69 Cal.2d at p. 820.) The obverse is not true, that is, hypothesizing an abstract relationship will not produce a benefit where none exists in fact. Payment of a transportation allowance, without more, is equally ineffectual to produce a benefit.

A transportation allowance may promote the recruitment of applicants living at a distance from the job; or, as is more likely in a collective bargaining situation, it may be demanded as a matter of fairness to workers who incur extra expenses in travel between home and work. Whatever the motivation, the essential purpose of the automobile trip does not change. If, as the going and coming rule denotes, the trip between home and the fixed place of work is primarily for the employee's benefit, the fixed reimbursement allowance does not alter that fact. Byers, living outside the 15-mile zone, was eligible for the allowance, while a fellow employee living within the zone, was not. Byers' trip was as much for his own benefit and as little for his employer's as that of his ineligible fellow employee.

It is said that the right of control ''goes to the very heart of the ascription of tortious responsibility.'' (*Connor* v. *Great Western Sav. & Loan Assn., supra,* separate opinion of Mosk, J., 69 Cal.2d at p. 874.) Physical control over the actual driving is irrelevant. (*Smith* v. *Workmen's Comp. App. Bd., supra,* 69 Cal.2d at p. 821.) The question is one of a right to control the trip. The only condition attached to the $6 daily allowance was residence beyond the 15-mile zone. Neither the collective bargaining contract nor the employer's traditional dominion over work practices[4] gave Oro-Dam Con-

[3]This aspect of the going and coming rule parallels established concepts of agency law. The Restatement Second of Agency, section 228, declares that one of the tests of the scope of employment is whether the employee's conduct ''is of the kind he is employed to perform.''

[4]See Teller, Management Functions under Collective Bargaining (1947) pp. 34-36, 65-66.

structors power to dictate the manner of travel, the kind of vehicle, its route or speed or even that the trip be taken at all. The employee might choose to travel by public carrier, in the car of a fellow worker or remain overnight in a lodging near the work site. The circumstances correspond to those described in Restatement Second of Agency, section 239: ''A master is not liable for injuries caused by the negligence of a servant in the use of an instrumentality which if [*sic*] of a substantially different kind from that authorized as a means of performing the master's service, or over the use of which it is understood that the master is to have no right of control.''

Measured by the two basic tests governing *respondeat superior* determinations, Byers' trip was outside the scope of his employment or, what is the same thing, within the going and coming rule. In some cases the question of an employer's liability under *respondeat superior* is a jury question, in others a question of law for the court. (*Loper* v. *Morrison,* 23 Cal.2d 600, 605-607 [145 P.2d 1]; see Weiner, *The Civil Jury Trial and the Law-Fact Distinction* (1966) 54 Cal.L.Rev. 1867, 1872-1873.) Here the facts were undisputed. The trip was for the employee's purpose alone. There was no occasion for the jury to weigh or balance the effect of a combined purpose trip or of a trip shaped by the transitory intention or state of mind of one or another of the parties. (Cf. *Loper* v. *Morrison, supra.*) In view of the undisputed facts governing the agency question, the trial court would have been justified in directing a verdict for the employer. Applied to the undisputed facts, the going and coming rule insulated the employer from liability as a matter of law.

This case was tried in March 1967, a few months before the Supreme Court's decision in *Zenith Nat. Ins. Co.* v. *Workmen's Comp. App. Bd., supra.* The trial court gave jury instructions dealing with the responsibility of Oro-Dam Constructors, the employer. In the light of Supreme Court statements in the *Zenith* opinion, these instructions were probably erroneous. Since the employer was not liable as a matter of law, the probable error caused no prejudice.

Judgment affirmed.

Pierce, P. J., and Regan, J., concurred.

A petition for a rehearing was denied March 19, 1969, and appellants' petition for a hearing by the Supreme Court was denied April 17, 1969. Peters, J., Tobriner, J., and Mosk, J., were of the opinion that the petition should be granted.