[Civ. No. 12524. Third Dist. June 30, 1971.]

ROBERT McGARVEY, Plaintiff and Appellant, v.
PACIFIC GAS & ELECTRIC COMPANY, Defendant
and Respondent.

556

## COUNSEL

Edward P. Freidberg for Plaintiff and Appellant.

Richard H. Peterson, Frederick T. Searls, Charles T. Van Deusen, Sanford M. Skaggs, Jack F. Fallin, Jr., and Archibald M. Mull, Jr., for Defendant and Respondent.

## OPINION

**PIERCE, P. J.**—Plaintiff Robert McGarvey appeals from a defense judgment after the trial court granted a summary judgment as to plaintiff's first cause of action and plaintiff elected to stand on his second cause of action after a general demurrer thereto had been sustained. The basis of both causes of action was personal injuries suffered by McGarvey, a motorcyclist, when defendant Howell (an employee of P. G. & E. not involved in this appeal) allegedly made a left turn as a part of an intended U-turn and struck McGarvey.

We will hold: (a) that P. G. & E. did not owe McGarvey a duty of care under the count of the complaint claiming a direct liability, and (b) that P. G. & E. was not vicariously liable because at the time of the accident Howell was not acting within the course and scope of his employment.

### FACTS

As alleged in the complaint plaintiff was driving a 1965 Honda motorcycle in a westerly direction on Fruitridge Road in Sacramento County, on May 15, 1968. Defendant Howell was driving a 1956 Ford car, also in a westerly direction, on Fruitridge Road. Defendant Howell made a U-turn in front of plaintiff's motorcycle and the motorcycle collided with the car, causing plaintiff's injuries.

P. G. & E. maintained a place of business at the northeast corner of

two intersecting Sacramento County streets, Florin-Perkins (north-south) and Fruitridge (east-west). Plaintiff put an aerial map in evidence. It is a part of the record before us. There are three buildings spread along the south half of the approximately block-long premises. The main building is located at the southwest corner of the property (the northeast corner of the intersection). To the north of that building is a parking lot. It fronts upon Florin-Perkins Road and occupies almost the entire northwest quarter of the property. Fruitridge has been widened along the block adjacent to the P. G. & E. property and, as shown by the photograph, cars are parked practically continuously along both the north and south sides of the street parallel to the curb yet leaving a traveled roadway for both westbound and eastbound traffic on Fruitridge.

Of the three buildings noted the shop is the most easterly. To its west, midway between the shop and the middle building, is a driveway. Apparently, somewhere in the vicinity or at this driveway Howell stopped along the curb to let off a rider, Perry, who was a coemployee. Both worked at the shop. He had started up again and, according to Howell's testimony, was making a left turn and had almost reached the center line of the highway when the collision took place. Howell had not seen the motorcycle before the accident but had heard its horn. The turn which he had made was preparatory to a U-turn. Howell was making the U-turn for the purpose of parking his car along the south curb. The point at which Perry had left the Howell automobile was next to but not in the driveway to the shop. The motorcycle came in contact with the left front of the automobile.

Howell and Perry had a pooling arrangement for driving to work, each driving his car on alternate weeks. The turning movement described was one adopted by each when driving his car.

Off-street parking had been provided by P. G. & E., but it was not used by Howell and Perry because it was too far away from the shop where the two men worked. No instructions had been given indicating where they should park. Their foreman, who also parked along the curb but on the opposite side of the street, was aware that this was a general practice. It was the habit of those who parked on the street to make U-turns in the morning because when they left at the end of the day their cars would be heading in the direction they would be driving to reach their homes. The traffic would be less congested when the employees working in the shop (who arrived at work earlier than office employees) arrived at work and left for the day.

There was nothing about Howell or Perry going to work or returning from work to their homes that was work connected.

The foregoing is a summary of the testimony of Howell and Perry in depositions given.

Wendell R. Kaufman was the immediate supervisor of Howell. When the motion for summary judgment was made, he filed a declaration in support of the motion. It was considered together with the two depositions; also a declaration opposing the motion was filed. (It will be discussed below.) Kaufman's declaration related to questions raised regarding the vicarious liability of P. G. & E. According to the declaration, Howell's work day began at 7:30 a.m. He received no mileage allowance or other payment for either compensation or expenses for the time spent traveling between his home and place of employment. On the day of the accident, May 15, 1968, Howell was performing no service for the benefit of P. G. & E. at the time of the accident. Howell was not required by P. G. & E. to use his automobile or any other specific type of transportation in going to and from work.

The declaration opposing the motion was that of Julius G. Minix. On May 28, 1968, a week after the accident, he had taken movies and had had the aerial photograph made. He described what he had seen: many parked cars on the street, evidencing the fact that there was inadequate parking, and he had also observed cars making U-turns. At certain hours the intersection described is a busy one. The streets which intersect are used by personnel from Aerojet, Mather Air Force Base and the Sacramento Army Depot, as well as by P. G. & E. employees. This causes a "tremendous traffic jam" and "a long back up of traffic."

Since the trial court's order sustains a demurrer to the second count of the complaint (relating to the direct liability of P. G. & E.), that count must be tested by the allegations of the complaint, except that we may consider the map described above which plaintiff himself put into evidence.

In the complaint the failure of P. G. & E. to provide parking space to accommodate all the cars of its employees is alleged. Also alleged is that employees are required, allowed and encouraged to park along the shoulders of Fruitridge; that defendant provides no one to direct traffic and traffic jams occurred which discourage some employees from entering the parking lot; that employees customarily made U-turns (as described above) when going to work rather than when leaving work, and this caused traffic hazards of which P. G. & E. was aware.[1]

---

[1]There is an allegation that P. G. & E. "dictated" to its employees where they may or may not park their vehicles. In the context in which the allegations of this complaint are framed—P. G. & E.'s responsibility for Howell having made a U-turn on a public street—such allegations are too sweeping to withstand even a general

## The Court Properly Sustained the General
## Demurrer of P. G. & E. to the Count
## Charging Direct Liability

█ The trial court sustained a general demurrer to the second alleged cause of action with leave to McGarvey to amend. He did not choose to do so but appealed from judgment following the order sustaining the demurrer.[2] When the demurrer was orally argued the court had before it written points and authorities submitted by P. G. & E. raising substantially the same points raised before this court on appeal. After oral argument the court took the matter under submission. No reply memorandum was filed by plaintiff.

█ The question on a general demurrer is whether or not, on the face of the complaint, a duty to plaintiff is shown on the part of defendant, breach of which proximately resulted in injury and damage to the non-contributorily negligent plaintiff. This is an issue of law for the court's determination. (Code Civ. Proc., § § 589, 591; *James* v. *Superior Court* (1968) 261 Cal.App.2d 415 [67 Cal.Rptr. 783].) █ There is an exception to the rule that matters considered on demurrer must appear on the face of the complaint. The exception relates to "any matter of which the court must or may take judicial notice . . . ." (Code Civ. Proc., § 430.) █ A court sitting in a particular locality "may take judicial notice of the existence and location of streets, their character and relation to each other, the congestion of pedestrian or vehicular travel, etc. (See *Hom* v. *Clark* (1963) 221 Cal.App.2d 622, 638 . . . [hg. den.].)" (Witkin, Cal. Evidence (2d ed. 1966) § 176, p. 162.) █ We also have in this appeal a somewhat anomalous situation; there was before the trial court and there is before this court not only an aerial photograph but the declaration of one Julius Minix describing the location of buildings, the flow of traffic, the places where automobiles are parked, etc., in the area involved in this litigation. Both the map and the declaration were introduced by plaintiff. Much of the evidence produced by both sides in connection with the motion for summary judgment related not to the vicarious liability of P. G. & E. under the doctrine of *respondeat superior* but to the alleged direct liability and duty of care claimed by plaintiff. In several respects plaintiff has pleaded one thing and proved another. Both his pleadings and proof were before the trial court when its final ruling on both matters was made. (See fn. 2.) No cases have been

demurrer. Obviously, divorced from any relationship with a parking lot on its premises more than a block away, an employer could no more dictate where an employee "may or may not" park a vehicle than it could tell him how to park his car in the driveway of his own home.

[2]That judgment, filed October 22, 1969, also covered the summary judgment relating to the first count.

cited to us and we have found none directly in point.[3] But a stream cannot rise higher than its source. The bases of plaintiff's law suit are (1) the alleged insufficiency of P. G. & E.'s off-street parking and of the exits and entrances from and to such parking during peak traffic conditions, and (2) its requiring or encouraging employees to park on public streets with a concomitant tolerance of their making U-turns to reach a parking space. It is upon these facts as related by plaintiff's own evidence (summarized above) that he must rely if he is to prove a duty of care.

One of the elements of actionable negligence is the breach of a duty of care owed by the defendant to the plaintiff. That was not always so. In what has been termed the "legal system of feudal society," "the defendant owed a duty to all the world to conduct himself without causing injury to his fellows." (*Dillon* v. *Legg* (1968) 68 Cal.2d 728, 734-735 [69 Cal.Rptr. 72, 441 P.2d 912].) No rigid rule can be stated defining when a duty of care owed by a specific defendant to plaintiff does or does not exist. Under modern law the following policy matters have been suggested as those the courts will consider and weigh: foreseeability of harm to plaintiff, degree of certainty of harm to plaintiff, closeness of connection between defendant's conduct and injury suffered, defendant's moral blameworthiness, policy of preventing future harm, the burden of imposing liability upon a defendant versus the consequences to the community if liability for breach is withheld, the availability, cost and prevalence of insurance for the risk involved. (See *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 112-113, 117-118 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]; *Calandri* v. *Ione Unified School Dist.* (1963) 219 Cal. App.2d 542, 548-549 [33 Cal.Rptr. 333] (hg. den.).) *Calandri* refers at length to another decision of this court, *Raymond* v. *Paradise Unified School Dist.* (1963) 218 Cal.App.2d 1 [31 Cal.Rptr. 847], which (on p. 8) contains a quotable phrase, "delicate policy judgments," and refers to the effect of a judicial declaration of law to "create precedent, more or less influential according to its factual proximity to the case at hand."

Our Supreme Court, applying these flexible "duty of due care" concepts, has on a "case-by-case basis" (*Dillon* v. *Legg, supra,* at p. 740) blazed new trails in fields in which new or rediscovered duties of care have been asserted—e.g., in *Greenman* v. *Yuba Power Products, Inc.* (1963) 59 Cal.2d 57 [27 Cal.Rptr. 697, 377 P.2d 897] (liability of manufacturers for defective design of products); *Dillon* v. *Legg, supra* (extension of liability of a tortfeasor who injures a child to encompass

---

[3]We do find authority to the effect that pleadings "should be truthful," that "recitals, if contrary to allegations in the pleading, will be given precedence . . . ." (3 Witkin, Cal. Procedure (2d ed. 1970) Pleading, § 319, p. 1978, and see cases there cited.)

limited liability for its parents resultant mental-physical illness); *Rowland* v. *Christian, supra,* 69 Cal.2d 108 (abolishing rigid and illogical distinctions relating to a land occupant's liability based upon plaintiff's status as trespasser, invitee or licensee).

This court believes that to pioneer in the creation of a hitherto nonexistent duty of care in the respects urged by plaintiff would lead, not out of, but into, a wilderness of unpredictability of decision—at least in this year 1971. Inadequacy of both off-street and on-street parking and surging traffic jams during hours of the commencement and end of work days or after crowd gatherings, whether commercial or cultural, are matters of common knowledge. These are problems of the society in which we live. They are problems as to which industrial employers are no more to be inveighed against than are school administrators, church deacons, symphony directors or state government. We live in a world on wheels. To rule, as plaintiff would have us rule, in the case at bench all such classes, *as well as industrialists,* might be affected. Effectually, what is asked here is the fixing of a duty upon industrialists to provide at their peril (1) adequate automobile parking facilities for all employees (plus customers?), (2) policemen to control traffic at least on an area-wide basis, or (3) as a substitute, to exact from employees as a condition to their being hired or remaining employed use of public or chartered transportation or to go to and from work on foot.

We need not, and do not, fix an inflexible rule by this decision. Circumstances can be conceived where an occupier of land could create automobile snarl-ups on his premises or unleash forces onto public streets the nature of which would require a court to say that injury to third persons was foreseeable and that a duty of care existed and was breached. This is not such a case. Plaintiff's theory is imaginative but unsound. It would exact a paternal chaperonage by employers over their employees neither reasonable nor just. As having some slight relevancy to the question of primary liability see *Rufo* v. *N. B. C. Nat. Broadcasting Co.* (1959) 166 Cal.App.2d 714, 720-721 [334 P.2d 16], where it was held that a nonsuit was properly granted in a case where a patron of a broadcasting studio show, while waiting in a crowd lined up for tickets, was jostled and fell to the sidewalk.

■ For the first time on appeal plaintiff calls attention to the "basic zoning ordinance" of the City of Sacramento. This court pays little heed to such Johnny-come-lately arguments of this type. (3 Witkin, Cal. Procedure (1954) Appeal, § 94, pp. 2261-2263.) Violation of the ordinance has been neither pleaded nor proved. Although the entire ordinance is appended to appellant's brief, he does not draw our attention to the specific

portion upon which he relies to base a claim that the ordinance is applicable or has been violated. We find nothing therein upon which a claim could be based. On the contrary, as the brief of P. G. & E. points out, to the extent that the matter has any relevancy, there has been issued to P. G. & E. a certificate of occupancy by the City of Sacramento. This, under the terms of the ordinance, appears to be at least prima facie evidence that the provisions of the ordinance have been met. (Evid. Code, § 664.)

## P. G. & E. Is Not Vicariously Liable

Plaintiff, applying what he asserts to be what has sometimes been called the "going and coming" rule in workmen's compensation cases, urges us to effect a carry-over of the rule to this action in torts. This court in *Harris* v. *Oro-Dam Constructors* (1969) 269 Cal.App.2d 911, 912 et seq. [75 Cal.Rptr. 544] (hg. den.) gave exhaustive treatment to the various theories upon which the doctrine of *respondeat superior* has been based. In that case we compared ordinary tort actions with the law of workmen's compensation. We pointed out that the courts generally have refused to apply vicarious liability in "going and coming" cases arising in common law torts. In the field of workmen's compensation, accidents occurring where the employer requires the employee to use his own car and where an employer allows an employee travel expenses have resulted in the employer being held liable. Such acts have been said to be for the benefit of the employer. In *Harris* we stated (on p. 915): "Court-made workmen's compensation doctrines develop from a social philosophy distinct from that underlying tort rules. Tort liability rests upon fault, compensability for employee injuries upon work-connection regardless of fault." In *Harris* the negligent employee received additional compensation from his employer for "travel expense" because he resided more than 15 miles from the place of work. We held (on p. 914), "we do not care to be bound by" rules based wholly upon workmen's compensation principles. We have not changed our views.[4] Contrary to the contention of appellant in his brief, we find nothing in the *Harris* opinion which lends support to the theory of his claim of the vicarious liability of P. G. & E. Nor do we find such support in any of the other authorities he has cited.

This case is distinguishable from cases such as *Hinman* v. *Westinghouse Elec. Co.* (1970) 2 Cal.3d 956 [88 Cal.Rptr. 188, 471 P.2d 988], and

---

[4]Nothing said in this opinion is intended to imply that views expressed herein regarding workmen's compensation law would or would not result in the liability of P. G. & E. under the facts of this case for an injury suffered by its employee Howell.

the distinction is noteworthy. There one Herman, an employee of Westinghouse, negligently struck plaintiff with his car. He was going to a job site (as distinct from the office where he worked), his employer had directed him to do that, *and he was going on company time.* Our Supreme Court held the employer to be liable under the doctrine of *respondeat superior,* pointing out that the basis of vicarious liability of the master is not his control or fault but the fact that at the time of the negligent injury caused by the employee the injury was a " '[risk] of the enterprise' " (p. 960)—the business for which he was working. The rationale of *Hinman* was stated as follows (on pp. 959-960): " 'The losses caused by the torts of employees, which as a practical matter are sure to occur in the conduct of the employer's enterprise, are placed upon that enterprise itself, as a required cost of doing business. They are placed upon the employer because, having engaged in an enterprise which will, on the basis of past experience, involve harm to others through the torts of employees, and sought to profit by it, it is just that he, rather than the innocent injured plaintiff, should bear them; and because he is better able to absorb them, and to distribute them, through prices, rates or liability insurance, to the public, and so to shift them to society, to the community at large.' (Prosser, Law of Torts (3d ed. 1964) p. 471; . . . )"

The same philosophy which rationalized the rule in *Hinman* is present in the cases involving the strict liability of manufacturers for defective products. The rule was involved in *Greenman* v. *Yuba Power Products, Inc., supra,* 59 Cal.2d 57, and the authorities expressing the reason for the rule are listed in that case at page 63.

Unless and until a rule of total liability without fault as applied to employers with employee-drivers is to be adopted (and if and when it comes it will undoubtedly be legislative and not judicial—see Prosser, Law of Torts (3d ed. 1964) p. 582), we see no basis logically to apply the philosophy to cases within the framework of the facts involved here.

Judgment affirmed.

Friedman, J., and Janes, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 25, 1971.