Ronald A. ANDERSON and Christine A. Anderson, Appellants,

v.

FALCON DRILLING COMPANY, an Oklahoma corporation, Appellee.

No. 58657.

Supreme Court of Oklahoma.

Feb. 12, 1985.

King, Roberts & Beeler, and Saunders & Byrd by K. David Roberts and Charles J. Byrd, Oklahoma City, for appellants.

Looney, Nichols, Johnson & Hayes by Robert D. Looney, Jr., Oklahoma City, for appellee.

LAVENDER, Justice:

On February 6th, defendant Steven Plavchak was driving north on Highway 77 some four miles north of Lexington, Oklahoma, when he lost control of the vehicle on the snow and ice covered highway. Plavchak's automobile turned sideways and collided with a vehicle being driven by appellant Ronald A. Anderson. Both Anderson and Plavchak received injuries as a result of the collision. Roy Thompson, a passenger in the Plavchak car, died as a result of the accident, and Brent Bugher, a second passenger, also received injuries.

Appellants, Ronald A. Anderson and his wife Christine A. Anderson, initiated this action, naming as defendants Steven Plavchak, appellee Falcon Drilling Company and United Services Automobile Association, appellants' insurance carrier. Appellants' claim against Falcon Drilling Company was based upon the theory of respondeat superior and was supported by the allegation that Plavchak had been within the scope of his employment with Falcon Drilling at the time of the accident.

A motion for "partial summary judgment"[1] was filed by appellants requesting a ruling by the trial court on the question of appellee's liability for appellants' damages resulting from the collision with Plavchak. As grounds for the ruling sought, appellants asserted that the question of Plavchak's status at the time of the accident had previously been determined in a Workers' Compensation Court action in which it had been found that the injuries suffered by Plavchak and the other occupants of his vehicle had arisen out of and occurred in the course and scope of their employment by appellee.

Appellee thereafter filed its own motion for summary judgment, alleging that, as a matter of law, Plavchak was not within the scope of his employment at the time of the accident.

Neither appellants nor appellee filed affidavits or exhibits in support of their allegations. In their briefs in support of their motions, and in opposition to the opposing motions, the parties argued that the facts before the trial court supported their positions. The only materials before the trial court to establish these facts were three depositions: one from appellant Ronald Anderson; one from defendant Plavchak; and one from G.A. Malloy, a toolpusher, or drilling site supervisor, employed by appellee.[2]

---

1. The disposition of a portion of a single cause of action is not a judgment at all, but an interlocutory summary adjudication. *Mann v. State Farm Mutual Automobile Insurance Co.*, 669 P.2d 768, 771 (Okla.1983).

2. A ruling on motion for summary judgment must be made on the basis of the record actually presented by the litigants and not on a record which is potentially possible. *Weeks v. Wedgewood Village, Inc.*, 554 P.2d 780, 784 (Okla. 1976).

The testimony presented in these depositions established that Plavchak was a member of a four man drilling crew employed on a drilling rig belonging to appellee, which, at the time of the accident, was in operation near the intersection of Reno and Eastern in Oklahoma City. The immediate supervisor of the drilling crew was the driller, Roy Thompson, who had died as a result of the collision. The driller was responsible for getting his shift to work on time to facilitate a smooth changeover in operation from one shift to another. In order to insure that his crew arrived on time, Thompson required his crew to car pool together. On the date of the collision, Thompson's crew was working evening (3:30 to 11:30) shift on the drilling rig. Thompson, Plavchak and third member of the crew, Brent Bugher, had met at Plavchak's house and were driving toward Norman to pick up the fourth member of the crew when the accident occurred.

The trial court granted appellee's motion for summary judgment, finding that Plavchak was not within the scope of his employment at the time of the accident. The trial court also denied appellants' motion for partial summary judgment. This ruling was appealed, and the cause assigned to the Court of Appeals, Division 1, which affirmed the judgment of the trial court in all respects. Appellants have now petitioned this Court for writ of certiorari to review the Court of Appeals decision, which appellants challenge as not being in accord with applicable decisions of this Court. We grant certiorari for the purpose of reviewing the Court of Appeals decision.

I.

A motion for summary judgment should be denied if, under the evidence presented, reasonable men might draw different interpretations from the undisputed facts.[3] Where different interpretations may be drawn from those facts as to the status of a defendant at the time of the commission of a tort, the question of status should be presented to a jury, under proper instructions, as a question of fact.[4]

The trial court, in granting summary judgment for appellee, apparently followed the "going and coming" rule recognized by this Court in the third syllabus of *Elias v. Midwest Marble and Tile Company*,[5] where we stated that, "[a]s a general rule, a man's employment does not begin until he has reached the place of his employment, and does not continue after he has gone ...." Or, as stated in *Hinman v. Westinghouse Electric Company:*[6]

> Under the "going and coming" rule, an employee going to and from work is ordinarily considered outside the scope of employment so that the employer is not liable for his torts. (1 Witkin, Summary of Cal.Law (7th ed.1960) pp. 448–449.) The "going and coming" rule is sometimes ascribed to the theory that the employment relationship is "suspended" from the time the employee leaves until he returns (*Harvey v. D & L Construction Co.*, 251 Cal.App.2d 48, 51, 59 Cal. Rptr. 255), or that in commuting he is not rendering service to his employer (*Robinson v. George*, 16 Cal.2d 238, 244, 105 P.2d 914). Nevertheless, there are exceptions to the rule.
>
> . . . .
>
> ... [E]xceptions will be made to the "going and coming" rule where the trip involves an incidental benefit to the employer, not common to commute trips by ordinary members of the work force. The cases also indicate that the fact that the employee receives personal benefits is not determinative when there is also a benefit to the employer. (Citation omitted)

Oklahoma, like California, also recognizes exceptions to this rule. It is appellants' claim that the trial court erred in finding

---

3. *Flick v. Crouch,* 434 P.2d 256, 262 (Okla.1967).

4. See *Fore v. McMillian,* 272 P.2d 1036 (Okla. 1954); *Murrell v. Goertz,* 597 P.2d 1223 (Okla. App.1979).

5. 302 P.2d 126 (Okla.1956).

6. 88 Cal.Rptr. 188, 471 P.2d 988, 990, 991 (1970).

that the facts of this case were not subject to being interpreted as fitting within one of these exceptions.

The exception relied on by appellants in both the trial court and on appeal was that recognized by this Court in the case of *Haco Drilling Co., Inc. v. Burchette:*[7]

> We recognize as the general rule that a man's employment does not begin until he has reached the place of his employment, and does not continue after he has gone. *Elias v. Midwest Marble & Tile Company*, Okl., 302 P.2d 126. However, the instant situation presents an exception to the general rule. Not only was it anticipated that an employee's car would be used but under the facts a particular person (on the day in question this was Hughes) and his car was to carry the ice water. Hughes was going to work but this does not vary the fact that he was engaged in carrying out instructions given relative to performance of acts in his employment.

The facts in *Haco* were highly similar to the facts in the present case. In *Haco*, three members of a drilling crew were en route to work when the driver lost control of his car and crossed the center line, striking the plaintiff in that case. The three crew members had made a practice of car pooling and took turns driving. The driller, their immediate supervisor, did not participate in the car pool, but had instructed the three crew members that the person responsible for driving would also be responsible for stopping at an ice house, with which the drilling company had made a previous arrangement, and filling a company provided water can with ice and water for use by the crew on shift. The driver received no compensation until he started work on the rig. The driver had picked up the other two crew members, stopped at the ice house and filled the water can, and was on a direct route to the drill site when the accident occurred.

In *Haco* these facts were submitted to a jury, which found that the driver was in the scope of his employment when the accident occurred. On appeal, this Court found that these facts were sufficient to support the jury's verdict. In the course of the opinion, this Court indicated that the transportation of the water can was a decisive issue. As a result, it appears to have become the practice in the oil field to give a crew its own water can and instruct them, as was done in the present case, that they could either fill it or not. However, to read *Haco* with this emphasis, as was done by the Court of Appeals in distinguishing *Haco*, is to give it an overly simplistic interpretation. The decisive statement in *Haco* was this Court's finding that, "Hughes [the driver] was going to work but this does not vary the fact that he was engaged in carrying out instructions given relative to performance of acts in his employment."[8]

In the present case, the driver, defendant Plavchak, was required by the driller, his immediate supervisor, to car pool. This car pooling requirement was of benefit to appellee's operations in that it facilitated smooth changeovers of drilling shifts. In the deposition of the tool pusher, G.A. Malloy, it was stated that if one of the crew members had objected to the car pooling, he, as rig supervisor, would have backed the driller's imposition of this requirement. It was as a result of the car pooling arrangement that Plavchak was driving north on Highway 77 to pick up the fourth member of the crew when the accident occurred, rather than proceeding by the quickest route from Lexington to Oklahoma City via Interstate 35.

Under these facts, it could be reasonably concluded that Plavchak "was engaged in carrying out instructions given relative to performance of acts in his employment," and thus within the scope of his employment at the time of the collision with appellant Anderson. As such, the existence of the master-servant relationship at the time

---

7. 364 P.2d 674, 677 (Okla.1961).

8. id.

of the accident was a question of fact for determination by the jury.[9] Thus, the trial court erred in granting summary judgment for appellee, and that judgment is hereby reversed. The Court of Appeals decision affirming that judgment is also erroneous in its application of *Haco Drilling* and is hereby vacated.

## II.

Appellants, in their petition for certiorari, also challenge the Court of Appeals ruling on their proposition that prior proceedings in the Workers' Compensation Court, finding Plavchak's injuries in the accident to have arisen out of and in the course of his employment, estopped appellee from denying liability under the doctrine of respondeat superior. This proposition was presented to the trial court as a "motion for partial summary judgment." The trial court denied this motion and the Court of Appeals affirmed the denial. We affirm the trial court's judgment on this point, but vacate the Court of Appeals opinion as erroneous.

As stated previously in this opinion,[10] a ruling on motion for summary judgment must be made on the basis of the record actually presented by the litigants and not on a record which is potentially possible. Appellants presented nothing to the trial court in support of their assertion that the fact of status had been previously litigated except bare allegations in their motion and supporting brief.

■ Summary judgment and summary adjudication are procedures designed to determine whether there is conflicting evidence on the existence of a fact.[11] The fact alleged by appellants was that the question of Plavchak's status as an employee of appellee at the time of the accident in which appellant Ronald Anderson was injured had been previously decided in a separate action.[12] The party relying on such a claim of issue preclusion bears the burden of establishing that the prior litigation has actually determined the question of fact sought to be precluded.[13] As stated by this Court in the case of *Runyan v. City of Henryetta:*[14]

> Where an estoppel by a former judgment rendered upon one cause of action is sought to be applied to matters arising in a suit on a different cause of action, the inquiry is whether the question of fact in issue in the latter case is the question of fact actually determined in the former action, and not what might have been litigated and determined therein. *Harding v. Taylor,* Okl., 272 P.2d 443; *Johnson v. Whelan,* 186 Okl. 511, 98 P.2d 1103.

The failure of appellants to file evidentiary materials from which the trial court could determine the matters actually litigated in the former action was fatal to their motion.[15]

■ This failure is exacerbated by the nature of the prior action upon which appellants attempted to rely. The nature of the questions involved in finding an injury compensable in workers' compensation cases differ markedly from the questions which must be dealt with in finding an employer liable for tortious injuries to others. The considerations inherent in this

---

9. See *Agee v. Gant,* 412 P.2d 155, 160 (Okla. 1966).

10. Supra, note 2.

11. *Mann v. State Farm Mutual Automobile Insurance Co.,* 669 P.2d at 771, footnote 4; *Loper v. Austin,* 596 P.2d 544 (Okla.1979).

12. Because we conclude that there was no error in the trial court's refusal to treat the scope of employment issue as conclusively determined by the compensation case, we need not, at this time, decide the propriety of the attempted offensive application of the doctrine of issue preclusion.

13. *McSorley v. Town of Hancock,* 11 Mass.App. 563, 417 N.E.2d 982 (1981).

14. 321 P.2d 689, 693 (Okla.1958).

15. See *Bernau v. Nealon,* 219 Va. 1039, 254 S.E.2d 82 (1979).

problem are illustrated by these statements from the case of *Church v. Arko:* [16]

There is a marked conceptual difference in the rationale imposing liability on the employer under workmen's compensation laws for injuries suffered by his employee on the one hand and, on the other, the rational imposing liability on the employer to the public in general for the negligent acts of his employee under the doctrine of respondeat superior. In the first instance, the employer under the workmen's compensation laws is made liable for injuries sustained by his employee irrespective of fault. Under general tort principles, on the other hand, fault is still one of the fundamental bases for imposing liability. The primary object for an award of damages in a civil action and the fundamental principle or theory on which such an award is based is just compensation or indemnity for loss or injury sustained by a complainant. (23 Cal.Jur.3d, Damages, § 1, p. 11.) Other considerations are involved in an award under the workmen's compensation laws.

In the light of these conceptual differences, it has been held that the authorities interpreting the words "arising out of and occurring in the course of his employment" for the purpose of determining liability under the workmen's compensation laws are not controlling when the test of liability is in the interpretation of the words "acting within the scope of employment" under the doctrine of respondeat superior. (*Harris v. Oro-Dam Constructors,* supra, 269 Cal. App.2d 911, 914–915, 75 Cal.Rptr. 544, 547.)

"Although a healthy symbiosis is possible, precedents developed in one field should not be injected into another without recognition of the separate principles prevailing in each." (Id., at p. 914, 75 Cal.Rptr. at p. 546.)

"Scope of employment" defines a more restricted area of employee conduct than the phrase "arising out of and in the course of the employment." (*Saala v. McFarland* (1965) 63 Cal.2d 124, 128–129, fn. 3, 45 Cal.Rptr. 144, 147, 403 P.2d 400, 403; see also *Laines v. Workmen's Comp. Appeals Bd.* (1975) 48 Cal.App.3d 872, 879–880, 122 Cal.Rptr. 139.) Thus, an employee can suffer a compensable injury under workers' compensation but not be within the scope of employment. (*Castro v. State of California* (1977) 70 Cal.App.3d 156, 159, 138 Cal.Rptr. 572.) If an injury is within the "scope of employment," it will probably be "arising out of and [occurring] in the course of the employment"; however, the reverse is not true. While the tests for liability under workers' compensation and vicarious liability of the employer for torts of the employee are closely related, the courts recognize a difference. (*Hinman v. Westinghouse Elec. Co.,* supra, 2 Cal.3d 956, 962, 88 Cal.Rptr. 188, 471 P.2d 988; *Rogers v. Kemper Constr. Co.* (1975) 50 Cal.App.3d 608, 619, 124 Cal. Rptr. 143.) (Footnotes omitted)

Thus, the mere contention that a judgment had been rendered in the Workers' Compensation Court, finding Plavchak's injuries compensable as occurring in the course of his employment, is clearly insufficient to support a motion for summary adjudication on the liability of Plavchak's employer to a third party injured in the same incident.

The trial court's denial of appellants' motion is affirmed. The Court of Appeals opinion, which attempted to decide this point on constitutional grounds, is vacated.[17]

### III.

The opinion of the Court of Appeals is vacated in its entirety. The judgment of the trial court is affirmed as to its denial of appellants' "motion for partial summary judgment" based on issue preclusion. The judgment of the trial court is reversed as

---

**16.** 75 Cal.App.3d 291, 298; 142 Cal.Rptr. 92, 96 (1977); accord *Elias v. Midwest Marble and Tile Co.,* supra, at note 5.

**17.** See *Curry v. Oklahoma City,* 519 P.2d 910 (Okla.1974).

to its grant of appellee's motion for summary judgment on the question of appellee's liability under the doctrine of respondeat superior. The matter is remanded to the trial court for further proceedings consistent with this opinion.

All the Justices concur.