[No. A018715. First Dist., Div. Five. July 13, 1984.]

CLIFTON M. HURLEY, Plaintiff and Appellant, v.
COUNTY OF SONOMA, Defendant and Respondent.

COUNSEL

Michael J. Donovan for Plaintiff and Appellant.

Geary, Shea & O'Donnell, Michael F. O'Donnell and Allan F. Hardcastle for Defendant and Respondent.

OPINION

HANING, J.—Plaintiff/appellant Clifton M. Hurley appeals from a summary judgment granted to defendant/respondent County of Sonoma upon appellant's action for personal injuries suffered from an allegedly dangerous condition of a public highway. We conclude appellant presented triable issues of fact and reverse the judgment.

Appellant was injured when a northbound car in which he was riding as the front seat passenger struck a concrete bridge abutment on Old Redwood Highway in Sonoma County at approximately 6:10 p.m. on December 30, 1979. The car was driven by Sheldon Silva and owned by Debora Ann Smith, who was riding in the rear seat.

Old Redwood Highway at the scene of the accident is a two-lane, two-way county road. Each lane is 12 feet wide. They are divided by a broken yellow strip set with raised reflectors. A solid white fogline runs along the outside of the lane. The speed limit is 50 miles per hour. The shoulder between the fogline and the abutment is seven feet, four feet of which is asphalt and three feet of dirt and gravel. The bridge crosses a small creek or drainage channel which passes under the highway at the point of the accident. There is no artificial lighting in the area.

The driver was not driving under the influence of alcohol or drugs, nor exceeding the speed limit, and there were no mechanical problems with the car. The accident was attributed to driver inattention; while Silva and Smith were attempting to close the sunroof the car drifted off the road and struck the abutment. No other single car accidents occurred between 1978 and 1980 involving this particular abutment.

Appellant's complaint alleged that (1) the road and abutment owned, maintained and controlled by respondent constituted a dangerous condition in that the abutment was only seven feet from the highway; (2) the highway had a defective slope toward the abutment; (3) there was no guardrail or other device to prevent vehicles from colliding with the abutment and (4) failure to erect a guardrail or other protective device placed travelers on the highway in a position of inherent risk of serious injury.

The trial court granted summary judgment on the grounds that (1) the sole cause of the accident was the driver's inattentiveness; (2) no additional warning devices would have prevented the driver from making adjustments to the sunroof at the time he did; and (3) no reasonable person could conclude that failure to install a guardrail constituted a dangerous condition as defined by Government Code sections 830 and 835.[1]

Appellant contends it was error to grant summary judgment because respondent's failure to maintain suitable warning delineators and a guardrail are questions of fact, and because a public entity is not absolved from liability for creating and maintaining public property in a condition made dangerous by reason of the foreseeable negligence of third parties.

The law governing summary judgment is well established. It may be granted when the moving party's affidavits support a judgment in its favor and the opposition's affidavits reveal no triable issues of fact. (*Rafeiro* v. *American Employers' Ins. Co.* (1970) 5 Cal.App.3d 799 [85 Cal.Rptr. 701].) The moving party's affidavits are to be construed strictly and the opposing party's liberally. (*Church* v. *Arko* (1977) 75 Cal.App.3d 291 [142 Cal.Rptr. 92]; *Black* v. *Sullivan* (1975) 48 Cal.App.3d 557 [122 Cal.Rptr. 119].) The affidavits opposing the motion must be accepted as true. (*Blaustein* v. *Burton* (1970) 9 Cal.App.3d 161 [88 Cal.Rptr. 319].) Because summary judgment is a drastic measure, any doubts are to be resolved in favor of the party opposing the motion. (*People* ex rel. *Riles* v. *Windsor University* (1977) 71 Cal.App.3d 326 [139 Cal.Rptr. 378].)

Respondent submitted declarations of two traffic engineers in support of its motion. Both declared they made a field inspection of the area, but do not give the dates thereof. Their declarations are dated more than one and one-half years after the accident. One engineer stated: "Warning delineators were installed in advance of the bridge abutment for both directions at the time the accident in question occurred and thus the bridge abutments [were] delineated with standard warning devices." He does not give a description of the warning delineators nor does he state how he knows

---

[1]Unless otherwise indicated, all further statutory references are to the Government Code.

they were in place at the time of the accident. The second engineer, employed by respondent's Department of Public Works, stated: "Type G Guide Markers were installed in advance of the bridge abutment for both directions at the time the accident in question occurred. The bridge abutments . . . were . . . delineated with standard warning devices." Type G markers are not described. A photo taken November 10, 1976, three years before the accident, submitted with the county traffic engineer's declaration, shows paddle markers with amber reflectors in them in front of the abutment. The traffic engineer stated: "To the best of my knowledge, these photographs constitute a true and accurate depiction of how the roadway appeared on the date they were taken, and also on the date of the subject accident. There is no record or indication in the County Public Works Department files which would indicate any changes in the roadway between the date these photos were taken and the date the subject accident occurred." The photos appear to have been taken during daylight hours.

In her deposition submitted as an affidavit in support of the motion, Debora Smith, the rear seat passenger, testified she had frequently driven along the portion of the highway where the accident occurred and had never noticed the abutment or any reflectors in the area. She testified that following the accident reflectors on the posts had been installed in front of the abutment. The deposition of the highway patrolman who investigated the accident was also submitted in support of the motion. He testified he did not inspect for reflectors or paddle markers and had no recollection as to whether there were such devices in place at the time of the accident. He could not determine by looking at a photograph taken at the scene of the accident if reflectors or paddle markers were present. Had he noticed any damage to county property he would have been required to report it to the county, the inference being that if he had found a paddle knocked over by the accident or the reflectors broken such devices would have been in place at the time of the accident.

A traffic engineer for appellant declared he made a field inspection seven months after the accident. He stated: "There are presently new clearance markers (type "P") installed on the right at the end of the headwall facing traffic. These have black and white diagonal stripes, commonly known as zebra stripes. On the southbound lane on the right is an old clearance marker still in place behind the new marker. It was a three-unit amber reflector marker, with only one unit intact." The inference from this remark is that no old marker existed in the northbound lane, the lane in which appellant's car was traveling.

Section 830, subdivision (a), defines "dangerous condition" as "a condition of property that creates a substantial (as distinguished from a

minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." Under section 835 a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either: (a) a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or (b) the public entity had actual or constructive notice of the dangerous condition under section 835.2 sufficiently in advance of the injury to have taken measures to protect against it. Under section 830.8 a public entity is liable for injury proximately caused by failure to provide a warning device as described in the Vehicle Code if the device was necessary to warn of a dangerous condition which endangered the safe movement of traffic and which would not be reasonably apparent to, and would not have been anticipated by, a person exercising due care. "The existence of a dangerous condition is usually a question of fact and may be resolved as a question of law only if reasonable minds can come to but one conclusion. [Citations.]" (*Mittenhuber* v. *City of Redondo Beach* (1983) 142 Cal.App.3d 1, 5 [190 Cal.Rptr. 694].)

▇▇▇ We believe, given the facts in the affidavits, more than one conclusion can be drawn about the existence of a dangerous condition at the site of this accident. The proximity of the abutment to the highway, the slope of the highway, the absence of lighting and the possible lack of warning devices could combine to create a dangerous condition, given the foreseeability of vehicles, for a variety of reasons, straying off the road. Respondent's traffic engineers declared that three other single car accidents occurred in the general vicinity of appellant's accident when the cars went off the highway and struck an abutment. Respondent could therefore foresee injury occurring to occupants of a vehicle which collides with an abutment after leaving the highway, under the same or similar circumstances.

A question of fact is also raised by appellant's traffic engineer who declared that, in his opinion, "[h]ad guardrails been installed, it is probable that the impact with the guardrail would have minimized personal injury to the occupants within the vehicle which collided with the concrete abutment" and "[s]ection 7.01.3 of the [State] Traffic Manual requires that on State Highways [this is a county highway] [a] guardrail is required at all fixed objects accessible to the traffic and within 30 feet of the travelled way." Respondent's declarations do not address the question of guardrails. Its traffic engineers state the shoulder meets the minimum clearance recommen-

dation of six feet as stated in paragraph 7-309.1C of the CalTrans Design Manual dated November 3, 1975. However, compliance with a recommendation may not in and of itself be sufficient to eliminate a dangerous condition when all surrounding conditions are considered. For instance, the minimum clearance may be perfectly adequate if the far side of the shoulder is an open field. However, if there is a fixed concrete object on the boundary of the shoulder the minimum clearance alone may not eliminate a dangerous condition; additional protections or warning devices may be necessary. Given the foreseeability of vehicles straying off the road, particularly during evening hours, questions of fact exist as to whether this abutment constituted a dangerous condition.

The trial court relied largely on *McKray* v. *State of California* (1977) 74 Cal.App.3d 59 [141 Cal.Rptr. 280] for its decision that the evidence in the instant case establishes as a matter of law that no dangerous condition existed. In *McKray* the driver, looking across the state highway at a pedestrian, drifted across the 10-foot wide shoulder and straddled a berm two to eight inches high. The car continued partly on the shoulder and partly on the berm for 75 feet until it struck a concrete abutment, injuring the passenger. This court upheld summary judgment for the state on the grounds that "the record conclusively establishes that [the driver's] negligence was the sole cause of plaintiff's injury." (*Id.*, at p. 63.) There was no dangerous condition because "[n]o reasonable person could conclude that any risk of injury existed to one using the highway 'with due care in a manner in which it was reasonably foreseeable that it would be used.'" (*Ibid.*) The assertion by plaintiff's expert that a guardrail at the edge of the shoulder near the abutment would have prevented such a serious accident did not suggest that absence of guardrails "on this particular one-mile stretch of highway, where clear visibility is in no way obstructed, contributed in any way to any defective or dangerous condition." (*Ibid.*) *McKray* is distinguishable. The accident in *McKray* occurred at 9:10 a.m. on a clear July day; this one occurred at 6:15 p.m. on a cloudy, dark December evening at a spot where the existence of visible warning devices is in question. The abutment in *McKray* was 10 feet from the outside of the lane. This one is seven feet. No accidents had occurred in the *McKray* accident site for five years; three cars had struck similar abutments in the general vicinity of the instant accident between 1978 and 1980. The slope of the road was not an issue in *McKray* as it is alleged to be here.

Because the supporting papers present factual questions as to whether this bridge abutment constituted a dangerous condition we are not here concerned with the apparent negligence of driver Silva. ■ "[I]t is established that although a third person may have been concurrently negligent with a public entity, the latter is not necessarily relieved from liability.

[Citations.] Foreseeability is the primary element. [Citations.] The question of proximate cause essentially is one of fact." (*Callahan* v. *City and County of San Francisco* (1967) 249 Cal.App.2d 696, 701 [57 Cal.Rptr. 639]; see also *Ducey* v. *Argo Sales Co.* (1979) 25 Cal.3d 707, 718 [159 Cal.Rptr. 835, 602 P.2d 755].) "[I]t is settled that what is required to be foreseeable is the general character of the event or harm—e.g., [a car straying off the highway and striking the abutment]—not its precise nature or manner of occurrence." (*Bigbee* v. *Pacific Tel. & Tel. Co.* (1983) 34 Cal.3d 49, 57-58 [192 Cal.Rptr. 857, 665 P.2d 947].)

 Given the conflict about warning devices and that reasonable minds could find a dangerous condition to exist here, triable issues of fact are established. The summary judgment is reversed.

Low, P. J., and King, J., concurred.

A petition for a rehearing was denied August 3, 1984, and respondent's petition for a hearing by the Supreme Court was denied September 19, 1984.