[No. B062758. Second Dist., Div. Six. June 30, 1993.]

ALEXANDRU CONSTANTINESCU, a Minor, etc., et al., Plaintiffs and Respondents, v.
CONEJO VALLEY UNIFIED SCHOOL DISTRICT, Defendant and Appellant.

HEATHER ALTRECHE, a Minor, etc., et al., Plaintiffs and Respondents, v.
CONEJO VALLEY UNIFIED SCHOOL DISTRICT, Defendant and Appellant.

[Opinion certified for partial publication.†]

†Pursuant to California Rules of Court, rule 976.1, this opinion is certified for partial publication. The portions of this opinion to be deleted from publication are identified as those portions between double brackets, e.g., [[/]].

**COUNSEL**

Ellis, Beach, Proctor & McCarthy and Korman Dorsey Ellis for Defendant and Appellant.

Sanford M. Gage, Ronald Kaplan and Lawrence W. Hait for Plaintiffs and Respondents.

**OPINION**

**GILBERT, J.**—An elementary school uses a small lot, which was once a bus loading zone, as a place for parents to pick up their children after school. The school district knows that the lot is extremely congested and hazardous at that time. A car driven by a parent picking up her children after school jumps the curb at the lot, striking and injuring children.

We hold that a jury properly found that the lot was in a dangerous condition for which the school district is liable.

The Conejo Valley Unified School District (the District) appeals from the judgment upon special and general jury verdicts in favor of plaintiffs Heather Altreche, Alexandru Constantinescu, and their parents in this consolidated action for personal injuries. We affirm.

FACTS

Heather and Alexandru attended Ladera Elementary School in Thousand Oaks. One afternoon in March 1986, Heather was waiting to be picked up after school in a designated area next to the school parking lot. Alexandru was walking on the sidewalk next to the lot going towards the waiting area. Suddenly, a car driven by a parent accelerated, jumped the parking lot curb and hit Alexandru, Heather and other students.

The parking lot at Ladera is a one-way, long, semicircular driveway. The entrance to the lot is at the top of a sloping driveway, at the bottom of which is a curbside area to pick up students.

The lot is small, and was originally used as a school bus loading zone. Parents usually enter the lot from one entrance, come down the hill, and park parallel to the curb. Next to the curb is a five-foot sidewalk and then a grassy area which is designated as the place for the children to wait. There is no barrier between the curb, the sidewalk and the grassy area where the children wait to be picked up. That portion of the driveway along the curb has room for about six or seven cars.

The lot has two lanes for traffic, but when cars are parked parallel to the curb, there is only one lane for traffic to move through the lot. Because of the scarcity of space, parents at times parked their cars at angles to the curb.

Mrs. Songhee Kwon drove to the pickup area at the Ladera school to pick up her children. She spotted a small space ahead of other cars lined up along the curb, drove around them in the through lane, and stopped her Toyota at about a 25-degree angle to the curb. She left her engine running, got out of her car and asked the driver in front of her to pull forward so that she could park parallel to the curb. Kwon returned to her car. She intended to back up so that she could maneuver her car alongside the curb. Instead, her car rapidly lurched forward and jumped the curb, causing injuries to children in its path, including Heather and Alexandru.

It is unclear whether the car lurched forward because of Kwon's negligence, because of a defect in the car's accelerator system, or because of a

combination of the two. No automobile accidents had ever occurred in the Ladera school parking lot.

Plaintiffs presented evidence that school principals and parents recognized that the lot was hazardous immediately before and after school. The school had "staggered" dismissal times before the 1985-1986 year. The school then changed the schedule so that all children were dismissed at one time. The loading zone became overcrowded and chaotic. Cars would be moving forward or backing up. Traffic was lined up on the streets waiting to use the lot. This would cause people to hurry in order to get in and out of the parking lot.

In the past, principals of the school had written the District explaining how hazardous the loading area was when students were being dropped off or picked up. During the school year when the accident occurred, the principal at Ladera had written the District to request construction of another parking lot to alleviate increasing traffic congestion in the existing lot. At times, he directed traffic in the lot.

One parent, who daily drove his children to the school from about 1982 through 1986, testified that ". . . the parking lot was inadequate, chaotic, extremely overcrowded and—dangerous. There were times when you would go and there—the traffic would be backed up from one end of the street to the other and you couldn't get anywhere near the parking lot. If you did happen to be able to get into the parking lot, it was a very difficult situation trying to maneuver in and out of—of any area you might be able to park in. You had to constantly be watching for kids running back and forth, for cars moving forward or backing up. It was a zoo. I don't know how else to say it." Two experts testified that although there had been no prior accidents in the nearly 30-year history of the school, this place was "an accident waiting to happen."

Heather and Alexandru settled their claims with all defendants except the District. The trial court consolidated their actions for trial against the District. The cause of action that went to the jury was one that alleged dangerous condition of public property under Government Code[1] section 835.

The Constantinescu complaint stated, in pertinent part, ". . . DISTRICT . . . [was] negligent in controlling and/or regulating traffic . . . on the grounds of LADERA SCHOOL, so as to create or permit the creation of a

---

[1] All further statutory references are to the Government Code unless otherwise specified.

dangerous condition at the school. . . . As a result of said failure . . . CONSTANTINESCU . . . was struck by an automobile . . . and . . . suffered . . . injuries."

The second amended Altreche complaint states, in pertinent part, that Ladera School "was in a dangerous condition that created unreasonable risk of the type of collision . . . described . . . even when the property was used with due care and in a manner that was reasonably foreseeable in that . . . Defendants had a duty to avoid and preclude dangerous and defective conditions of public property . . . and . . . breached said duty by carelessly . . . using, managing, . . . designing, . . . supervising, . . . marking [and] controlling . . . parking areas of the Ladera Elementary School, all of which . . . proximately created a dangerous and defective condition of traffic congestion, unsafe traffic control, and no effective separation or barrier between student pedestrians and vehicles, which . . . proximately caused the . . . injuries . . . to plaintiffs."

The District unsuccessfully moved for summary judgment, directed verdict or nonsuit. The jury returned special verdicts finding that the school property was in a dangerous condition which was a legal cause of the injuries which occurred. The jury further found that the injuries occurred in a manner reasonably foreseeable as a consequence of that dangerous condition and that the District knew or should have known of the dangerous condition.

The trial court denied the District's motions for judgment notwithstanding the verdict and for new trial. This appeal ensued.

## DISCUSSION

Liability against a public entity may only be established as provided by statute. (*Peterson* v. *San Francisco Community College Dist.* (1984) 36 Cal.3d 799, 809 [205 Cal.Rptr. 842, 685 P.2d 1193]; § 815; *Williams* v. *Horvath* (1976) 16 Cal.3d 834, 838 [129 Cal.Rptr. 453, 548 P.2d 1125].)

Section 835 of the Tort Claims Act (§§ 830-840.6) states, in pertinent part: "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:

". . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(b) The public entity had actual or constructive notice of the dangerous condition . . . ."

Section 830, subdivision (a) defines "dangerous condition" to mean "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used."

Section 830, subdivision (b) defines "protect against" as including "repairing, remedying or correcting a dangerous condition, providing safeguards against a dangerous condition, or warning of a dangerous condition."

■ Plaintiffs allege that the District negligently supervised the congested Ladera School parking lot, and failed to erect barriers between the lot and the sidewalk. The District therefore created a dangerous condition of public property under section 835 of the Tort Claims Act.

The District contends it did not create a dangerous condition at the Ladera School within the meaning of these statutes. "To successfully allege a 'dangerous condition' within the meaning of section 830, a plaintiff must allege that the condition of the public property created a substantial risk when 'used with due care' in a foreseeable manner." (*Swaner* v. *City of Santa Monica* (1984) 150 Cal.App.3d 789, 798 [198 Cal.Rptr. 208].) If the property is dangerous, the public entity is not relieved of liability simply because of a third party user's negligence. If the third party user's negligence, however, is unforeseeable, then such negligence may break the chain of causation between the dangerous condition created by the public entity and the injury suffered by a plaintiff. (*Id.*, at p. 804.)

■ " 'Whether a given set of facts and circumstances creates a dangerous condition is usually a question of fact and may only be resolved as a question of law if reasonable minds can come to but one conclusion.' " (*Peterson* v. *San Francisco Community College Dist.*, *supra*, 36 Cal.3d at p. 810.)

### A School District's Duty to Its Students

■ A special relationship exists between a school district and its students who are on campus for a school-related function. (*Leger* v. *Stockton Unified School Dist.* (1988) 202 Cal.App.3d 1448, 1458-1459 [249 Cal.Rptr. 688]; accord, *Rodriguez* v. *Inglewood Unified School Dist.* (1986) 186 Cal.App.3d 707, 715 [230 Cal.Rptr. 823].) Although school districts are not

insurers of the safety of their students and schools are not considered to be dangerous places, per se (*Leger*, 202 Cal.App.3d, *supra*, at p. 1459), the District has a heightened duty to make the school safe because of this special relationship. (*Id.*, at pp. 1458-1459.)

The California Law Revision Committee notes that "[w]here it is reasonably foreseeable that persons to whom a lower standard of care is applicable—such as children—may be exposed to a substantial risk of injury from the property, the public entity should be required to take reasonable precautions to protect such persons from that risk." As examples of such situations, the committee states: "Thus, a public entity may be expected to fence a swimming pool or to fence or lock up a dangerous instrumentality if it is reasonably foreseeable that small children may be injured if such precautions are not taken." (See Cal. Law Revision Com. com. to § 830, 32 West's Ann. Gov. Code (1980 ed.) p. 266.)

### Congested Loading Zone

Ordinarily, traffic congestion is not a dangerous condition invoking the application of section 835. (*Mittenhuber* v. *City of Redondo Beach* (1983) 142 Cal.App.3d 1 [190 Cal.Rptr. 694].)

In *McGarvey* v. *Pacific Gas & Elec. Co.* (1971) 18 Cal.App.3d 555 [95 Cal.Rptr. 894], an employee of Pacific, while making a U-turn next to the Pacific plant, struck plaintiff, a motorcylist. Plaintiff alleged that Pacific failed to provide parking space to accommodate all the cars of its employees, and that it encouraged employees to park on the street and knew that its employees made U-turns and created traffic congestion.

The *McGarvey* court rejected plaintiff's argument that Pacific owed him a duty of care. The court pointed out that a characteristic of modern life is inadequate parking and traffic jams.

The *McGarvey* court, however, acknowledged that "[c]ircumstances can be conceived *where an occupier of land could create automobile snarl-ups on his premises* or unleash forces onto public streets the nature of which would require a court to say that injury to third persons was foreseeable and that a duty of care existed and was breached." (*McGarvey* v. *Pacific Gas & Elec. Co.*, *supra*, 18 Cal.App.3d at p. 562, italics added.)

That is what happened here. The District helped create traffic congestion that was particularly dangerous. It converted a small lot which had been previously used as a bus loading zone into something quite different. This

small area became a place where parents in their automobiles converged at the same time to pick up their children after school. With the chaotic traffic conditions that existed under these circumstances, a jury could reasonably conclude this area was dangerous within the meaning of section 830, particularly when a school district is involved.

The precise nature of the accident need not be foreseeable, only the general character of the event or harm. (*Bigbee* v. *Pacific Tel. & Tel. Co.* (1983) 34 Cal.3d 49, 57-58 [192 Cal.Rptr. 857, 665 P.2d 947]; *Hurley* v. *County of Sonoma* (1984) 158 Cal.App.3d 281, 288 [204 Cal.Rptr. 621].) Cars at times were angled towards the curb, pointing in the general direction of students, and with their engines running. It is reasonably foreseeable that the accident which happened here would occur.

### Corrective Measures

Public entities may be held liable for failure to erect barriers or to correct other conditions of their property. Liability attaches where all the elements of section 835 are satisfied, and "[t]he public entity had actual or constructive notice of the dangerous condition . . . a sufficient time prior to the injury to have taken measures to protect against the dangerous condition." (§ 835, subd. (b).) Section 830, subdivision (b) states that " 'Protect against' includes . . . providing safeguards against a dangerous condition . . . ."

In *Ducey* v. *Argo Sales Co.* (1979) 25 Cal.3d 707, 711 [159 Cal.Rptr. 835, 602 P.2d 755], a driver approaching a traffic jam on the freeway hit the brakes too late, shot across the median area and crashed head-on into a car coming from the opposite direction. Our Supreme Court upheld judgment against the State of California for failure to provide freeway median barriers because "the evidence in the instant case was clearly sufficient for the jury to conclude that the lack of a median barrier created a substantial risk of injury even in the absence of negligent conduct." (*Id.*, at p. 719.)

In *Ducey*, the state knew that median barriers should have been placed in the vicinity because daily traffic had rapidly increased to over 40,000 vehicles by 1968. The state was aware that the rate of cross-median injuries was "unusually high." Although requested funds had been approved and allocated, and the state had awarded a contract to construct the barrier, the project was cancelled due to a scheduled conflicting freeway widening project.

Here, although there had been no prior accidents, the District knew for years through its own principals how dangerous this loading area had

become. As in *Ducey*, traffic increased dramatically over time. Moreover, traffic congestion in the lot became particularly acute because the District discontinued busing and permitted the small loading zone to be used by parents to pick up their children.

The District exacerbated the situation when it eliminated staggered sessions the year this accident occurred. Because of the changes the District wrought at the site, adjacent streets became lined with cars and traffic became chaotic. Parents rushed into the loading area, jostled for space and at times angled towards the designated waiting area to pick up their young children. Under these particular facts and circumstances, the jury properly found the District had a duty to erect barriers to protect against the danger it knew existed at the site.

█ █ Where a public entity has actual or constructive notice of a dangerous condition, it has a duty to take reasonable steps to protect the public from the danger even if such dangers are not necessarily created by the entity. (*Swaner* v. *City of Santa Monica, supra*, 150 Cal.App.3d at p. 807.) "[P]laintiffs must allege foreseeability before they can successfully recover from a public entity for injuries caused by the lack of a barrier." (*Id.*, at p. 810.) When facts disclose such foreseeable circumstances, "the question of the reasonableness of a public entity's action in any [such] particular situation is one of fact for a jury." (*Id.*, at pp. 810, 813.)

In *Ducey* and *Swaner*, the public entity had knowledge of prior accidents. A plaintiff, however, need not allege prior accidents when there is evidence, as here, that the public entity knew of the dangerous condition of its property.

*Curreri* v. *City etc. of San Francisco* (1968) 262 Cal.App.2d 603 [69 Cal.Rptr. 20], is a case where a public entity was held liable for a dangerous condition even though there were no prior accidents at the site. A 78-year-old driver parked his car against a low curb at a right angle to a steep hill in San Francisco. When he returned, he discovered that other cars had parked close to his. In attempting to drive away from this precarious spot, with the help of a friend guiding him, his foot slipped from the brake to the accelerator. This caused the car to slide over the curb, injuring a child sitting on the front steps of a flat.

The trial court found no liability on the part of the city. It dismissed plaintiff's action pursuant to city's motion for summary judgment. The appellate court reversed. It said: "In determining whether a triable issue [of fact] exists we must be guided by whether reasonable men might differ as to

what constitutes a dangerous condition under all existing conditions." (*Curreri* v. *City etc. of San Francisco, supra,* 262 Cal.App.2d at pp. 609-610.)

The court recognized that the city "has no duty to provide curbs or other protective features throughout the City which would in all cases prevent negligent motorists from driving from the street onto the sidewalk and . . . injuring persons." (*Curreri* v. *City etc. of San Francisco, supra,* 262 Cal.App.2d at p. 610.) The *Curreri* court, however, acknowledged that factors such as right-angle parking and difficulties of maneuvering a car on a steep street, as well as visibility problems, may combine to present a triable issue of fact regarding whether the city created a dangerous condition of public property. (*Ibid.*)

The *Curreri* court concluded that "[t]he trier of fact could be justified in concluding that the two to three-inch curb might be considered no protection to persons lawfully using the sidewalk and adjacent property. Parking on many of San Francisco streets is a hazardous procedure in itself. It is believed that reasonable persons may differ as to the type of protective measures, if any, that may be indicated on these streets. Whether a high curb [e.g., city standard at time of accident was six inches], or angle parking [previously recommended by city inspector], . . . or a barricade were precautions which should have been foreseen to have prevented the accident is, of course, unknown. However, under the circumstances, the trier of fact could reasonably conclude that the City by the omission of one or more of these or other precautionary measures maintained a dangerous condition as to the overall parking situation on Greenwich Street." (*Curreri* v. *City etc. of San Francisco, supra,* 262 Cal.App.2d at p. 611.)

Here, as in *Curreri,* there was an amalgam of factors caused by the District that made the lot dangerous.

[[/]]*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed. Costs to respondents.

Stone (S. J.), P. J., and Yegan, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 23, 1993.

---

*See footnote, *ante*, page 1466.