Filed 7/23/24  Rouis v. The Regents of the Univ. of Cal. CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| LOU BAYA OULD ROUIS et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, <br><br> Defendant and Respondent. | B316495 <br><br> (Los Angeles County Super. Ct. No. 18STCV07984) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Laura A. Seigle, Judge. Reversed in part and remanded with directions.

Mirch Law Firm, Kevin Mirch and Marie C. Mirch for Plaintiffs and Appellants.

Horvitz & Levy, Jeremy B. Rosen Andrew G. Spore; O'Hagan Meyer, Alaleh T. Khosrowpour and Geoffrey M. Hersch for Defendant and Respondent.

# INTRODUCTION

Plaintiff Lou Baya Ould Rouis, an incoming first-year student at UCLA at the time of the accident, fell while climbing down from the top bunk bed in her dorm room. She hit her back on the desk or the chair next to her bed. She then stood up, and as she walked to the front door of her dorm room, she fainted and injured her eye. Lou Baya and her father, Ali Ould Rouis[1], subsequently sued the governing board of the University of California (The Regents) for negligence, intentional infliction of emotional distress, breach of the housing contract, breach of implied contract, and breach of the covenant of good faith and fair dealing.

The Regents moved for summary judgment or, in the alternative, summary adjudication. With respect to the negligence claim, The Regents argued that, as a matter of law, the absence of a separate ladder to access the upper bunk bed does not constitute a dangerous condition. Thus, according to The Regents, plaintiffs' negligence claim fails because under Government Code section 835[2], a public entity is only liable for an injury caused by a dangerous condition on its property. The trial court agreed, concluding plaintiffs failed to provide evidence that creates a triable issue of fact regarding the existence of a dangerous condition due to the lack of a proper ladder.

On appeal, plaintiffs argue the dangerous condition alleged in their operative complaint was not only the absence of a ladder,

---

1 Because plaintiffs share the same surname, we refer to them by the first names for clarity.

2 All further undesignated references are to the Government Code.

2

but also the improper assembly of the bunk bed so that the bars at the foot of the bed (used to climb up to the top bunk) were not evenly spaced, and the overcrowding of furniture in the dorm room impeded any safe exit from the top bunk. Viewing the allegations in the complaint liberally, as we must (see Code Civ. Proc., § 452), we agree with plaintiffs. Because The Regents' motion did not negate every alternative theory of liability presented by the pleadings in support of the negligence claim, summary adjudication of that claim should not have been granted.

For the reasons discussed below, we also conclude the trial court erred by granting summary adjudication of the causes of action for breach of contract and breach of the covenant of good faith and fair dealing. The trial court properly granted summary adjudication, however, of the claims against The Regents for intentional infliction of emotional distress and breach of implied contract.

## FACTUAL AND PROCEDURAL BACKGROUND

In July 2017, Lou Baya moved from France to California to attend UCLA as an undergraduate student. She and her father, Ali, signed a contract for on-campus housing.[3] The housing contract stated that UCLA would provide Lou Baya with a furnished room and the room would be "appropriately furnished based on the total number of occupants." It further stated that UCLA, at its sole discretion, "reserves the right to utilize a double room for double or triple occupancy . . . ."

---

3      Lou Baya was a minor at the time the parties entered into the housing contract.

The housing contract also incorporated by reference UCLA's on-campus housing regulations. The regulations stated that "[l]adders and replacement guard rails for elevated beds are available upon request through the front desk of each residence hall."

Lou Baya attended a summer program at UCLA before starting the fall quarter of her first year. During the summer program, she lived in an on-campus residence called Sproul Cove. The room had two elevated beds and a ladder that could be moved between beds. To access her bed, Lou Baya used both the ladder and the wooden bars built into the side of the bed, which were even and symmetrical.

On September 19, 2017 Lou Baya moved into a different building, De Neve Fir, which was to be her permanent housing for that academic year. Her assigned room had one bunk bed and one lofted bed, plus three desks, three desk chairs, three dressers, and one closet. The room was a double room converted to a triple.

Unlike her previous room, her new room had no ladder to access the top bunk bed, and the wooden bars at the foot of the bed were not evenly spaced. The end of the bunk bed with the wooden bars was approximately 9 inches from the desk chair and desk.

Four days after moving to her new room, Lou Baya took an afternoon nap on the top bunk. After waking, she started climbing down using the wooden bars at the foot of the bed. As she reached for the fourth bar, she slipped and fell. She hit her back, either on the desk next to the bed or on the chair. Lou Baya then walked to the door of the room. As her hand reached the door handle, she fainted, fell, and hit her head. Her eyeglasses shattered, and the glass went into her eye. Lou Baya's roommate,

4

Grace Gelone, went to get a resident assistant, who called the police. Lou Baya was taken to the hospital by ambulance, where she stayed a few days. She had surgery on the eye that was injured in the accident.

Lou Baya and Ali sued The Regents. In the operative complaint, Lou Baya alleged claims for negligence (fourth cause of action) and intentional infliction of emotional distress (IIED) (fifth cause of action). Ali alleged breach of contract (first cause of action), and related claims for breach of implied contract (second cause of action) and breach of the implied covenant of good faith and fair dealing (third cause of action).[4]

The Regents moved for summary judgment, or in the alternative, summary adjudication of the first through fifth causes of action brought against it. The Regents argued that, as a matter of law, the bunk bed did not constitute a dangerous condition. The Regents' argument that the bunk bed was not dangerous was based on evidence regarding the absence of any other similar injuries in the past 10 years due to the lack of a detachable ladder being provided for an elevated bed. The Regents also argued the housing contract and related regulations defeat Ali's contract-based claims, and no evidence supports Lou Baya's claim for IIED.

Plaintiffs opposed the motion, arguing that, in addition to the lack of a ladder, the "uneven spaces in [t]he wooden bars [on the bed] and lack of space between [t]he bed and [t]he desk and chair" created a dangerous condition. Among other evidence, plaintiffs submitted a declaration from Lou Baya, pictures of the

---

4    Plaintiffs asserted additional products liability causes of action against defendants who are not parties to this appeal.

5

dorm room showing the bunk bed and furniture, and declarations from two purported experts.

Following two hearings, the trial court issued a written order granting The Regents' motion. With respect to Lou Baya's claim for negligence, the trial court found The Regents met its initial burden to show the absence of a dangerous condition. It then determined plaintiffs' expert declarations were not sufficient to create disputed facts because they asserted conclusions without predicate facts or reasoned explanations. It further concluded none of plaintiffs' other evidence "creates a triable issue of fact regarding the existence of a dangerous condition due to the lack of a proper ladder[.]" The court also concluded there were no triable issues of material fact on plaintiffs' remaining claims and thus, entered summary judgment in favor of The Regents.

Plaintiffs appeal from the judgment.[5]

## DISCUSSION

### I.    Standard of Review

"A party is entitled to summary judgment only if there is no triable issue of material fact and the party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment must show that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense. (*Id*., subd. (p)(2).) If the defendant meets this burden, the burden shifts to the

---

5      Plaintiffs appealed from the order granting summary judgment. Although plaintiffs' appeal preceded entry of judgment, we treat the notice of appeal as filed after entry of judgment. (Cal. Rules of Court, rule 8.104(d)(2).)

plaintiff to present evidence creating a triable issue of material fact. (*Ibid*.) A triable issue of fact exists if the evidence would allow a reasonable trier of fact to find the fact in favor of the party opposing summary judgment. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [(*Aguilar*)].)

"We review the trial court's ruling on a summary judgment motion de novo, liberally construe the evidence in favor of the party opposing the motion, and resolve all doubts concerning the evidence in favor of the opponent. (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.) We must affirm a summary judgment if it is correct on any of the grounds asserted in the trial court, regardless of the trial court's stated reasons. [Citation.]" (*Grebing v. 24 Hour Fitness USA, Inc.* (2015) 234 Cal.App.4th 631, 636-637.)

## II. Lou Baya's Claim for Negligence (Fourth Cause of Action)

### A. Statutory Framework

Section 835, part of the Government Claims Act (§ 810, et seq.), "sets out the exclusive conditions under which a public entity is liable for injuries caused by a dangerous condition of public property." (*Brown v. Poway Unified School Dist.* (1993) 4 Cal.4th 820, 829.)[6] Section 835 provides: "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous

6    It is undisputed that UCLA is a public entity. (See *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 619 (*Regents*) ["UCLA is a public entity."].)

7

condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either: [¶] (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or [¶] (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

The term "dangerous condition" is statutorily defined as a "condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." (§ 830, subd. (a).) "As to what constitutes a dangerous or defective condition no hard-and-fast rule can be laid down, but each case must depend upon its own facts." (*Fackrell v. City of San Diego* (1945) 26 Cal.2d 196, 206.) A dangerous condition of public property can come in several forms and may be based on an "amalgam" of factors. (*Constantinescu v. Conejo Valley Unified School Dist.* (1993) 16 Cal.App.4th 1466, 1476.)

"Whether property is in a dangerous condition often presents a question of fact, but summary judgment is appropriate if the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines that no reasonable person would conclude the condition created a substantial risk of injury when such property is used with due care in a manner which is reasonably foreseeable that it would be used." (*Mathews v. City of Cerritos* (1992) 2 Cal.App.4th 1380, 1382, citing § 830.2.)

**B.    The Regents Does Not Negate Every Theory of Liability Alleged in the Complaint**

Before analyzing whether The Regents met its initial burden on summary judgment to demonstrate Lou Baya cannot demonstrate a dangerous condition exists, we must first determine what dangerous conditions were properly alleged in the complaint. (See *Vulk v. State Farm General Ins. Co.* (2021) 69 Cal.App.5th 243, 255 ["the pleadings set the boundaries of the issues to be resolved at summary judgment."].)

In the general allegations of the complaint, under the heading titled "The Injury[,]" paragraph 16 alleges, in part: "The furnishings of the dorm room were one bunk bed, one mezzanine bed, a dresser, and a desk for each bed. There was no safe access to the top bunk bed. UCLA failed to provide a ladder for the bunk bed, and the bunk bed structure itself did not provide safe access to and from the top bunk. The spaces between the lateral wood bars on the head of and foot of the bottom bunk were not even." In support of her cause of action for negligence, Lou Baya "re-allege[d] and incorporate[d] all paragraphs of this complaint" and further alleged: "Defendant breached this duty by failing to inspect the dorm room for safety, and failing to provide a ladder to access the upper bunk of the bed . . . . [¶] Upon information and belief, Defendant further breached its duty by improper assembly of the bunk bed assigned to Lou Baya."

In moving for summary judgment, The Regents did not address the allegations regarding uneven wooden bars at the foot of the bed or the overcrowding of furniture prohibiting safe access to the top bunk bed. Thus, the trial court focused on the lack of a separate ladder to access the top bunk bed and concluded plaintiffs failed to provide evidence that creates a triable issue of

9

fact regarding the existence of a dangerous condition due to the lack of a proper ladder. But "to prevail on its motion for summary judgment, [the defendant] had the burden of negating every alternative theory of liability presented by the pleadings." (*Farley v. El Tejon Unified School Dist.* (1990) 225 Cal.App.3d 371, 379.)

The Regents contend these alternative theories (i.e., uneven bars and crowding of the room prohibiting safe access to the top bunk bed) were not alleged in the complaint and thus, the trial court did not need to address them. It argues plaintiffs did not argue the alternative theories until their opposition to The Regents' summary judgment motion. We are unpersuaded.

Under Code of Civil Procedure section 452, for the purpose of determining a pleading's effect, "its allegations must be liberally construed, with a view to substantial justice between the parties." "'[The] essence is fairness in pleading in order to give the defendant sufficient notice of the cause of action stated against him so that he will be able to prepare his case [citations].'" (*Fuhrman v. California Satellite Systems* (1986) 179 Cal.App.3d 408, 423, disapproved on other grounds by *Silberg v. Anderson* (1990) 50 Cal.3d 205, 219.) Although not artfully pled, we conclude the allegations of "improper assembly[,]" "no safe access to the top bunk bed[,]" the bars not being "even" and the "structure itself did not provide safe access" provided The Regents with sufficient notice of the theories pled. We therefore turn to whether The Regents met its initial burden in moving for summary judgment to demonstrate, as a matter of law, that *each of the conditions pled*—lack of a ladder, overcrowding of furniture near the bed, and asymmetrical bars on the foot of the bed (either separately or together)—did not constitute a dangerous condition.

10

The Regents argue there was no reasonably foreseeable and substantial risk of injury (and therefore, no dangerous condition) based on evidence that Lou Baya safely used the bunk bed several times before the incident, and there were no similar incidents in the past 10 years. The Regents submitted the declaration of Barbara Wilson, the Senior Director Housing Operations & Safety for Housing & Hospitality at UCLA. She declared that based on "calculations [she] ran utilizing the relevant data concerning on campus occupancy between 2010 and 2021, roughly 48,000 residents were likely to have been in elevated beds over the last 10 years on campus." She further declared: "As part of my work overseeing UCLA on campus housing operations, when a student is injured at one of the residence halls, I am customarily made aware of the incident. I am unaware of any other incidents involving someone suffering an injury due to the lack of a detachable ladder being provided for an elevated bed and falling while using the wooden bars on the side of the bed itself."

The Regents also submitted the declaration of Dean Malilay, the Director of Insurance and Risk Management at UCLA. She declared that "UCLA maintains records of reported injury accidents on the UCLA campus. Such reports are collected in a database. As part of my job duties, I have access to and knowledge of this database." She further declared: "At my request, a search for reports of any injuries or incidents similar to the one claimed by plaintiff Lou Baya . . . in this matter (involving an accident wherein she claims the failure to provide a detachable ladder to an elevated bed, and use of the integrated ladder with uneven spacing of the wood bars of such integrated ladder constitutes a hazardous and/or dangerous condition) was

11

run against this database. The search included incidents that occurred during the past 10 years . . . . The search identified no reported similar incidents to the one involving Lou Baya."

Relying on these declarations, The Regents argue that "because there were no prior injuries like this one, there necessarily were no incidents in which either the space between the wooden bars *or* the space between the bed and the desk played a role in the student's injury." This is a leap, however, that is unsupported by the evidence.

On the issue of absence of similar accidents, *Lane v. City of Sacramento* (2010) 183 Cal.App.4th 1337 (*Lane*) is instructive. In *Lane*, plaintiffs sued the City of Sacramento, seeking to hold it liable for injuries they sustained when their car struck a concrete divider on a city street. (*Id*. at p. 1339.) The city moved for summary judgment on the ground that the center divider did not constitute a dangerous condition. (*Id*. at p. 1340.) The city's argument was based on evidence regarding the absence of any other claims relating to the divider. The city offered evidence that its claims administrator maintains a computerized database of claims submitted to the city regarding injuries that might involve city property, and the claims administrator searched the database for records of claims involving the center divider at issue but found none, other than the claims submitted by plaintiffs. (*Ibid*.)

The Court of Appeal held that the city did not meet its initial burden in moving for summary judgment on plaintiffs' claims under section 835. (*Lane, supra,* 183 Cal.App.4th at p. 1344.) The court first noted that on summary judgment, the moving party's affidavits are strictly construed. (*Id*. at p. 1345.) "Viewed through the prism of strict construction, the city's

12

evidence did not establish a 'complete absence of any similar accidents'" but rather established only that "someone acting on behalf of the city's claims administrator had searched a computerized database of claims submitted to the city for records of claims involving the center divider [at issue] but found none, other than the claims submitted by plaintiffs." (*Ibid*.) "The city offered no evidence, however, on how the database was created or maintained, or how the search of the database was conducted. Thus, there was no evidentiary basis for determining that the database constituted a complete and accurate record of claims submitted to the city, let alone for determining that the search the unidentified person conducted retrieved all of the pertinent records within the database." (*Ibid*.)

The *Lane* court further explained that "even assuming the city's evidence was sufficient to establish an absence of claims" other than plaintiffs' related to the center divider at issue, "an absence of claims is not the same thing as an absence of accidents." (*Lane, supra*, 183 Cal.App.4th at pp. 1345-1346.) Finally, although the absence of other similar accidents is related to the determination of whether a condition is dangerous, "the absence of similar accidents is [not] *dispositive* of whether a condition is dangerous, [nor does it] compel[ ] a finding of nondangerousness absent other evidence." (*Id*. at p. 1346, italics in original.)

As in *Lane*, here The Regents offered no evidence on how the database was maintained nor how the search of the database was conducted. The record is also silent regarding how many of the elevated beds in the past 10 years were similar to Lou Baya's bed (with uneven wooden bars) and how many rooms were converted from double occupancy to triple occupancy (thereby

13

crowding the access to the top bunk bed). Moreover, an absence of *reported* injuries is not the same as an absence of accidents. (*Lane, supra*, 183 Cal.App.4th at pp. 1345-1346.)

Because The Regents' evidence was not sufficient to demonstrate, as a matter of law, that the absence of a separate ladder, uneven wooden bars on the foot of the bed, and overcrowding of furniture impeding a safe exit from the upper bunk bed, did not constitute a dangerous condition or dangerous conditions of public property, the burden never shifted to plaintiffs to demonstrate a triable issue of material fact on this issue. Even if the burden shifted, however, material issues of fact exist. Lou Baya declared that her room over the summer "had a ladder for the elevated beds and space for the students to move around." The room she moved into for the academic year, however, was "converted from a double room over the summer to a triple room and did not have a ladder. The only access was for [her] to climb on the side of the end on wooden slats that were not evenly spaced." She further declared that the bunk bed was "so close to the other furniture in the room[.]" Plaintiffs also submitted photographs of the room, showing the bunk bed, and the space between the bed and the desk and chair. The Regents argue the photographs show "this was an ordinary bunk bed in any ordinary dorm room that posed no substantial, reasonably foreseeable risk when used with due care." Whether the dorm room and bunk bed are "ordinary" such that the risk created by

14

all three alleged dangerous conditions was "minor" or "trivial", however, is for a jury to decide.[7]

### III.    Lou Baya's IIED Claim (Fifth Cause of Action)

"The elements of the tort of intentional infliction of emotional distress are: "'(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. . . ." Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community.' [Citation.] The defendant must have engaged in 'conduct intended to inflict injury or engaged in with the realization that injury will result.'" (*Christensen v. Superior Court* (1991) 54 Cal.3d 868, 903 (*Christensen*).) "It is not enough that the conduct be intentional and outrageous. It must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware." (*Ibid.*)

Plaintiffs argue there are triable issues of material fact with respect to Lou Baya's IIED claim because UCLA knew there was no ladder in the room and expected the students to climb over the crowded furniture to access the top bunk and climb the

---

7       In light of this conclusion, we need not reach plaintiffs' arguments that (1) the trial court abused its discretion by disregarding plaintiffs' expert declarations; and (2) the trial court erred by not striking the declarations of Malilay and Wilson based on The Regents' failure to produce the documents relied upon by the declarants in purported violation of Evidence Code section 771.

rungs at the end of the bed.[8] Thus, according to plaintiffs, "The Regents acted with reckless disregard." But mere knowledge of these facts does not equate to "'"reckless disregard of the probability of causing, emotional distress."'" (*Christensen, supra*, 54 Cal.3d at p. 903.) Nor does it demonstrate that a reasonable factfinder could conclude that the conduct was "'so extreme as to exceed all bounds of that usually tolerated in a civilized community.'" (*Ibid.*) The trial court, therefore, properly granted summary adjudication of Lou Baya's IIED claim.[9]

## IV. Ali's Contract-Based Claims: First, Second, and Third Causes of Action

### A. Breach of Contract (First Cause of Action)

Ali's breach of contract claim is based on the housing contract. As discussed above, the housing contract incorporates UCLA's housing regulations, which state that "[l]adders and replacement guard rails for elevated beds are available upon request through the front desk of each residence hall." There is no evidence in the record that Lou Baya ever requested or was denied a ladder. Plaintiffs, therefore, do not challenge the trial court's ruling that, as a matter of law, The Regents did not breach the housing contract by failing to provide a ladder.

---

8  Lou Baya does not challenge the trial court's ruling that The Regents met its initial burden on summary judgment. Thus, any challenge to that portion of the court's ruling is forfeited. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 (*Benach*) ["When an appellant fails to raise a point, . . . we treat the point as [forfeited]."].)

9  Even if the trial court considered plaintiffs' purported expert declarations, nothing in those declarations demonstrates extreme and outrageous conduct.

Instead, plaintiffs argue the absence of a ladder was not the only act that breached the contract. Rather, "[t]he bunk bed with uneven wooden bars, placed too close to the desk and bed, were [*sic*] not appropriate" and therefore breached UCLA's agreement to provide an "appropriately furnished" room. In response, The Regents contend the housing contract includes no affirmative guarantee of safety, and provides only that "the room will be appropriately furnished based on the total number of occupants." Thus, according to the Regents, the room was appropriately furnished under the contract because it had one bed, desk, chair and dresser for each student. But The Regents fail to demonstrate that, as a matter of law, "appropriately furnished" merely means three beds, desks, chairs, and dressers in *any* condition and placed into the room in *any* manner. We therefore conclude The Regents did not meet its initial burden as the moving party on summary judgment to "'show[ ] that one or more elements of the [plaintiff's] cause of action'"—i.e., breach—"'cannot be established, or that there is a complete defense.'" (*Aguilar, supra*, 25 Cal.4th at p. 849.)

Accordingly, the trial court erred by granting summary adjudication of Ali's breach of contract claim.

### B. Breach of Implied Contract (Second Cause of Action) and Breach of The Covenant of Good Faith and Fair Dealing (Third Cause of Action)

The trial court held Ali's implied contract claim fails because an express contract governed the parties' contractual relationship at the time of the accident. Plaintiffs do not challenge this ruling on appeal. We therefore deem any argument regarding Ali's implied contract claim forfeited. (See *Benach, supra*, 149 Cal.App.4th at p. 852.)

17

With respect to Ali's cause of action for breach of implied covenant of good faith and fair dealing, the trial court held the claim fails because the implied covenant cannot impose a substantive duty beyond those in the parties' agreement. (See *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 350 [The covenant of good faith and fair dealing "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement."].) The court explained: "Plaintiffs argue the room was not safe because it lacked a ladder, and therefore [The Regents] interfered with the purpose of the contract to provide a safe living space. [Citation.] Plaintiff's argument would imply a term – that ladders must be in the rooms – that is inconsistent with the terms of the contract – that ladders are available upon request." As discussed above, however, plaintiffs' complaint is not premised solely on the lack of a ladder, but also the uneven wooden bars at the foot of the bed and the overcrowding of furniture prohibiting safe access to the top bunk bed. As also discussed above, The Regents did not meet its burden to demonstrate the language in the housing contract stating the room will be "appropriately furnished" is limited to providing beds, desks, chairs, and dressers in any condition and placed anywhere in the room. We therefore conclude the trial court erred by granting summary adjudication of Ali's implied covenant of good faith claim.

## DISPOSITION

The judgment is reversed, and the trial court is directed to vacate its order granting The Regents' motion for summary judgment and enter a new order: granting summary adjudication of the second and fifth causes of action, and denying summary

18

adjudication of the first, third, and fourth causes of action. The parties are to bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

CURREY, P. J.

We concur:

COLLINS, J.

MORI, J.

19